(Slip Opinion)   OCTOBER TERM, 2006   1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## MARRAMA *v*. CITIZENS BANK OF MASSACHUSETTS ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 05–996.   Argued November 6, 2006—Decided February 21, 2007

In filing his petition under Chapter 7 of the Bankruptcy Code, petitioner Marrama misrepresented the value of his Maine property and that he had not transferred it during the preceding year. Respondent DeGiacomo, the trustee of Marrama's estate, stated his intention to recover the Maine property as an estate asset. Thereafter, Marrama sought to convert the proceeding to Chapter 13, but the trustee and respondent bank, Marrama's principal creditor, objected, contending that the request to convert was made in bad faith and would constitute an abuse of the bankruptcy process. The Bankruptcy Judge denied Marrama's request, finding bad faith. Affirming, the First Circuit's Bankruptcy Appellate Panel rejected Marrama's argument that he had an absolute right to convert under §706(a) of the Bankruptcy Code, which provides that a Chapter 7 debtor "may convert a case" so long as it has not been converted previously, and that a waiver of the right to convert is unenforceable. The First Circuit also rejected that argument, emphasizing, *inter alia,* that a bankruptcy court has the authority to dismiss a Chapter 13 petition based on a debtor's bad faith, and that a first-time motion to convert a Chapter 7 case to Chapter 13 should not be treated differently from the filing of a Chapter 13 petition in the first instance.

*Held:* Marrama forfeited his right to proceed under Chapter 13. The broad description of the right to convert as "absolute" in Senate and House Committee Reports fails to give full effect to the express limitation of §706(d), which provides that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." That text expressly conditioned Marrama's right to convert on his ability to qualify as a Chapter 13

Syllabus

"debtor." Marrama does not qualify as such a debtor under §1307(c), which provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause." Bankruptcy courts routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words "for cause," and a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of bad faith is tantamount to a ruling that the individual does not qualify as a Chapter 13 debtor. Congress gave "'honest but unfortunate debtor[s]'" *Grogan* v. *Garner*, 498 U. S. 279, 287, the chance to repay their debts should they acquire the means to do so, and §706(a) protects a debtor from being forced to waive that right. However, a provision protecting a borrower from waiver is not a shield against forfeiture. Neither §706 nor §1307(c) limits a court's authority to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor. On the contrary, bankruptcy judges' broad authority to take necessary or appropriate action "to prevent an abuse of process" described in Code §105(a) is adequate to authorize an immediate denial of a §706 motion to convert in lieu of a conversion order that merely postpones the allowance of equivalent relief and may give a debtor an opportunity to take action prejudicial to creditors. Pp. 5–10.

430 F. 3d 474, affirmed.

STEVENS, J., delivered the opinion of the Court, in which KENNEDY, SOUTER, GINSBURG, and BREYER, JJ., joined. ALITO, J., filed a dissenting opinion, in which ROBERTS, C. J., and SCALIA and THOMAS, JJ., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports.  Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–996

## ROBERT LOUIS MARRAMA, PETITIONER *v.* CITIZENS BANK OF MASSACHUSETTS ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIRST CIRCUIT

[February 21, 2007]

JUSTICE STEVENS delivered the opinion of the Court.

The principal purpose of the Bankruptcy Code is to grant a "'fresh start'" to the "'honest but unfortunate debtor.'" *Grogan* v. *Garner*, 498 U. S. 279, 286, 287 (1991).  Both Chapter 7 and Chapter 13 of the Code permit an insolvent individual to discharge certain unpaid debts toward that end.  Chapter 7 authorizes a discharge of prepetition debts following the liquidation of the debtor's assets by a bankruptcy trustee, who then distributes the proceeds to creditors.  Chapter 13 authorizes an individual with regular income to obtain a discharge after the successful completion of a payment plan approved by the bankruptcy court. Under Chapter 7 the debtor's non-exempt assets are controlled by the bankruptcy trustee; under Chapter 13 the debtor retains possession of his property.  A proceeding that is commenced under Chapter 7 may be converted to a Chapter 13 proceeding and vice versa.  11 U. S. C. §§706(a), 1307(a) and (c).

An issue that has arisen with disturbing frequency is whether a debtor who acts in bad faith prior to, or in the course of, filing a Chapter 13 petition by, for example,

fraudulently concealing significant assets, thereby forfeits his right to obtain Chapter 13 relief. The issue may arise at the outset of a Chapter 13 case in response to a motion by creditors or by the United States trustee either to dismiss the case or to convert it to Chapter 7, see §1307(c). It also may arise in a Chapter 7 case when a debtor files a motion under §706(a) to convert to Chapter 13. In the former context, despite the absence of any statutory provision specifically addressing the issue, the federal courts are virtually unanimous that prepetition bad-faith conduct may cause a forfeiture of any right to proceed with a Chapter 13 case.[1] In the latter context, however, some courts have suggested that even a bad-faith debtor has an absolute right to convert at least one Chapter 7 proceeding into a Chapter 13 case even though the case will thereafter be dismissed or immediately returned to Chapter 7.[2] We granted certiorari to decide whether the Code mandates that procedural anomaly. 547 U. S. ____ (2006).

I

On March 11, 2003, petitioner, Robert Marrama, filed a voluntary petition under Chapter 7, thereby creating an estate consisting of all his property "wherever located and by whomever held." 11 U. S. C. §541(a). Respondent Mark DeGiacomo is the trustee of that estate. Respondent Citizens Bank of Massachusetts (hereinafter Bank) is the principal creditor.

In verified schedules attached to his petition, Marrama made a number of statements about his principal asset, a

———————

[1] See, *e.g., In re Alt*, 305 F. 3d 413, 418–419 (CA6 2002); *In re Leavitt*, 171 F. 3d 1219, 1224 (CA9 1999); *In re Kestell*, 99 F. 3d 146, 148 (CA4 1996); *In re Molitor*, 76 F. 3d 218, 220 (CA8 1996); *In re Gier*, 986 F. 2d 1326, 1329–1330 (CA10 1993); *In re Love*, 957 F. 2d 1350, 1354 (CA7 1992); *In re Sullivan*, 326 B. R. 204, 211 (Bkrtcy. App. Panel CA1 2005).

[2] See, *e.g.*, *In re Martin*, 880 F. 2d 857, 859 (CA5 1989); *In re Croston*, 313 B. R. 447 (Bkrtcy. App. Panel CA9 2004); *In re Miller*, 303 B. R. 471 (Bkrtcy. App. Panel CA10 2003).

house in Maine, that were misleading or inaccurate. For instance, while he disclosed that he was the sole beneficiary of the trust that owned the property, he listed its value as zero. He also denied that he had transferred any property other than in the ordinary course of business during the year preceding the filing of his petition. Neither statement was true. In fact, the Maine property had substantial value, and Marrama had transferred it into the newly created trust for no consideration seven months prior to filing his Chapter 13 petition. Marrama later admitted that the purpose of the transfer was to protect the property from his creditors.

After Marrama's examination at the meeting of creditors, see 11 U. S. C. §341, the trustee advised Marrama's counsel that he intended to recover the Maine property as an asset of the estate. Thereafter, Marrama filed a "Verified Notice of Conversion to Chapter 13." Pursuant to Federal Rule of Bankruptcy Procedure 1017(c)(2), the notice of conversion was treated as a motion to convert, to which both the trustee and the Bank filed objections. Relying primarily on Marrama's attempt to conceal the Maine property from his creditors,[3] the trustee contended that the request to convert was made in bad faith and

--------

[3] The trustee also noted that in his original verified schedules Marrama had claimed a property in Gloucester, Mass., as a homestead exemption, see 11 U. S. C. §522(b)(2); Mass. Gen. Laws, ch. 188, §1 (West 2005), but testified at the meeting of creditors that he did not reside at the property and was receiving rental income from it, App. 71a–72a. Moreover, when asked at the meeting whether anyone owed him any money, Marrama responded "No," *id.,* at 50a, and in response to a similar question on Schedule B to his petition, which specifically requested a description of any "tax refunds," Marrama indicated that he had "none." Supp. App. 6. In fact, Marrama had filed an amended tax return in July 2002 in which he claimed the right to a refund, and shortly before the hearing on the motion to convert, the Internal Revenue Service informed the trustee that Marrama was entitled to a refund of $8,745.86, App. 30a–31a.

would constitute an abuse of the bankruptcy process. The Bank opposed the conversion on similar grounds.

At the hearing on the conversion issue, Marrama explained through counsel that his misstatements about the Maine property were attributable to "scrivener's error," that he had originally filed under Chapter 7 rather than Chapter 13 because he was then unemployed, and that he had recently become employed and was therefore eligible to proceed under Chapter 13.[4]  The Bankruptcy Judge rejected these arguments, ruling that there is no "Oops" defense to the concealment of assets and that the facts established a "bad faith" case. App. 34a–35a. The judge denied the request for conversion.

Marrama's principal argument on appeal to the Bankruptcy Appellate Panel for the First Circuit[5] was that he had an absolute right to convert his case from Chapter 7 to Chapter 13 under the plain language of §706(a) of the Code. The panel affirmed the decision of the Bankruptcy Court. It construed §706(a), when read in connection with other provisions of the Code and the Bankruptcy Rules, as creating a right to convert a case from Chapter 7 to Chapter 13 that "is absolute only in the absence of extreme

————————

[4] The parties dispute the accuracy of this representation. The trustee's brief notes that Schedule I to Marrama's original petition indicates that he had been employed by a flooring company at the time the case was filed. See Brief for Respondent Mark G. DeGiacomo 10, n. 7 (citing Supp. App. 18, 30). Marrama's counsel stated during oral argument, however, that the income listed in Schedule I represented an estimate based on employment that had not yet begun. Tr. of Oral Arg. 24. Since the sufficiency of the evidence of bad faith is not at issue, we may assume that Marrama did have more income available when he sought to convert than when he commenced the Chapter 7 case.

[5] The judicial council of any circuit is authorized by statute to establish a bankruptcy appellate panel service, comprising bankruptcy judges, to hear appeals from the bankruptcy courts with the consent of the parties. See 28 U. S. C. §158(b); *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 252 (1992). The First Circuit has established this service.

circumstances." *In re Marrama,* 313 B. R. 525, 531 (2004). In concluding that the record disclosed such circumstances, the panel relied on Marrama's failure to describe the transfer of the Maine residence into the revocable trust, his attempt to obtain a homestead exemption on rental property in Massachusetts, and his nondisclosure of an anticipated tax refund.

On appeal from the panel, the Court of Appeals for the First Circuit also rejected the argument that §706(a) gives a Chapter 7 debtor an absolute right to convert to Chapter 13. In addition to emphasizing that the statute uses the word "may" rather than "shall," the court added:

"In construing subsection 706(a), it is important to bear in mind that the bankruptcy court has unquestioned authority to dismiss a chapter 13 petition—as distinguished from converting the case to chapter 13—based upon a showing of 'bad faith' on the part of the debtor. We can discern neither a theoretical nor a practical reason that Congress would have chosen to treat a first-time motion to convert a chapter 7 case to chapter 13 under subsection 706(a) differently from the filing of a chapter 13 petition in the first instance." *In re Marrama*, 430 F. 3d 474, 479 (2005) (citations omitted).

While other Courts of Appeals and bankruptcy appellate panels have refused to recognize any "bad faith" exception to the conversion right created by §706(a), see n. 2, *supra*, we conclude that the courts in this case correctly held that Marrama forfeited his right to proceed under Chapter 13.

II

The two provisions of the Bankruptcy Code most relevant to our resolution of the issue are subsections (a) and (d) of 11 U. S. C. §706, which provide:

"(a) The debtor may convert a case under this chapter

> to a case under chapter 11, 12, or 13 of this title at
> any time, if the case has not been converted under
> section 1112, 1208, or 1307 of this title. Any waiver of
> the right to convert a case under this subsection is
> unenforceable.

>  "(d) Notwithstanding any other provision of this sec-
> tion, a case may not be converted to a case under an-
> other chapter of this title unless the debtor may be a
> debtor under such chapter."

Petitioner contends that subsection (a) creates an un-
qualified right of conversion. He seeks support from lan-
guage in both the House and Senate Committee Reports
on the provision. The Senate Report stated:

> "Subsection (a) of this section gives the debtor the one-
> time absolute right of conversion of a liquidation case
> to a reorganization or individual repayment plan case.
> If the case has already once been converted from
> chapter 11 or 13 to chapter 7, then the debtor does not
> have that right. The policy of the provision is that the
> debtor should always be given the opportunity to re-
> pay his debts, and a waiver of the right to convert a
> case is unenforceable." S. Rep. No. 95–989, p. 94
> (1978); see also H. R. Rep. No. 95–595, p. 380 (1977)
> (using nearly identical language).

The Committee Reports' reference to an "absolute right"
of conversion is more equivocal than petitioner suggests.
Assuming that the described debtor's "opportunity to
repay his debts" is a short-hand reference to a right to
proceed under Chapter 13, the statement that he should
"always" have that right is inconsistent with the earlier
recognition that it is only a one-time right that does not
survive a previous conversion to, or filing under, Chapter
13. More importantly, the broad description of the right
as "absolute" fails to give full effect to the express limita-

tion in subsection (d). The words "unless the debtor may be a debtor under such chapter" expressly conditioned Marrama's right to convert on his ability to qualify as a "debtor" under Chapter 13.

There are at least two possible reasons why Marrama may not qualify as such a debtor, one arising under §109(e) of the Code, and the other turning on the construction of the word "cause" in §1307(c). The former provision imposes a limit on the amount of indebtedness that an individual may have in order to qualify for Chapter 13 relief.[6] More pertinently,[7] the latter provision, §1307(c), provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding "for cause" and includes a nonexclusive list of 10 causes justifying that relief.[8] None of the specified causes mentions

————————

[6] Subsection (e) of 11 U. S. C. §109 provides:

"Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000 may be a debtor under chapter 13 of this title."

These dollar limits are subject to adjustment for inflation every three years. See §104(b).

[7] Marrama initiated a new Chapter 13 case the day after we granted certiorari in the present case. The new case was dismissed on the grounds that, under §109(e), he was ineligible to be a Chapter 13 debtor. See *In re Marrama*, 345 B. R. 458, 463–464, and n. 10 (Bkrtcy. Ct. Mass. 2006). As the Bankruptcy Judge made no such determination on the record before us in this case, and as it is not necessary to our decision that such a determination be made, we do not consider whether Marrama fails to meet the §109(e) debt limit.

[8] Title II U. S. C. §1307(c) provides, in relevant part:

"Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case

prepetition bad-faith conduct (although subparagraph 10 does identify one form of Chapter 7 error—which is necessarily prepetition conduct—that would justify dismissal of a Chapter 13 case).[9]  Bankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words "for cause."  See n. 1, *supra*.  In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13.  That individual, in other words, is not a member of the class of "'honest but unfortunate debtor[s]'" that the bankruptcy laws were enacted to protect.  See *Grogan* v. *Garner*, 498 U. S., at 287. The text of §706(d) therefore provides adequate authority for the denial of his motion to convert.

  The class of honest but unfortunate debtors who do possess an absolute right to convert their cases from

—————

under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

  "(1) unreasonable delay by the debtor that is prejudicial to creditors;

  "(2) nonpayment of any fees and charges required under chapter 123 of title 28;

  "(3) failure to file a plan timely under section 1321 of this title;

  "(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521."

  Section 521(2), which has since been amended and redesignated as §521(a)(2), see 119 Stat. 38, imposes a duty on a debtor in a Chapter 7 proceeding to file within a certain time period a statement of intent with respect to the retention or surrender of property being used to secure debts.  See 11 U. S. C. A. §521(a)(2), (2004 ed. and Supp. 2006).

  [9] Indeed, because §521(2) by its terms applies only to Chapter 7 debtors, at least one prominent treatise has assumed that this subsection could only apply to a debtor who has converted a case from Chapter 7 to Chapter 13.  See 8 Collier on Bankruptcy ¶1307.04[9] (15th ed. rev. 2006).

Chapter 7 to Chapter 13 includes the vast majority of the hundreds of thousands of individuals who file Chapter 7 petitions each year.[10]  Congress sought to give these individuals the chance to repay their debts should they acquire the means to do so.  Moreover, as the Court of Appeals observed, the reference in §706(a) to the unenforceability of a waiver of the right to convert functions "as a consumer protection provision against adhesion contracts, whereby a debtor's creditors might be precluded from attempting to prescribe a waiver of the debtor's right to convert to chapter 13 as a non-negotiable condition of its contractual agreements."  430 F. 3d, at 479.

A statutory provision protecting a borrower from waiver is not a shield against forfeiture.  Nothing in the text of either §706 or §1307(c) (or the legislative history of either provision) limits the authority of the court to take appropriate action in response to fraudulent conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor.[11]  On the contrary, the broad authority granted to bankruptcy judges to take any action that is necessary or appropriate "to prevent an abuse of process" described in §105(a) of the

——————

[10] We are advised by the Administrative Office of the United States Courts that 833,148 Chapter 7 cases were filed in fiscal year 2006. Memorandum from Steven R. Schlesinger, Administrative Office of the United States Courts, to Supreme Court Library (Dec. 13, 2006) (available in Clerk of Court's case file).

[11] We have no occasion here to articulate with precision what conduct qualifies as "bad faith" sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7.  It suffices to emphasize that the debtor's conduct must, in fact, be atypical.  Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation.  11 U. S. C. §1325(a)(3); see *In re Love*, 957 F. 2d, at 1356 ("Because dismissal is harsh . . . the bankruptcy court should be more reluctant to dismiss a petition . . . for lack of good faith than to reject a plan for lack of good faith under Section 1325(a)").

Code,[12] is surely adequate to authorize an immediate denial of a motion to convert filed under §706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.[13]

Indeed, as the Solicitor General has argued in his brief *amicus curiae,* even if §105(a) had not been enacted, the inherent power of every federal court to sanction "abusive litigation practices," see *Roadway Express, Inc.* v. *Piper*, 447 U. S. 752, 765 (1980), might well provide an adequate justification for a prompt, rather than a delayed, ruling on an unmeritorious attempt to qualify as a debtor under Chapter 13.

Accordingly, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

[12] Title II U. S. C. §105(a) provides:

"The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

[13] Both the Chapter 7 trustee and the United States as *amicus curiae* argue in their briefs that in the interval between the allowance of a motion to convert under §706(a) and the subsequent granting of a motion to dismiss under §1307(c), the fact that the debtor would have possession of the property formerly under the control of the trustee would create an opportunity for the debtor to take actions that would impair the rights of creditors. Whether or not that risk is significant, under our understanding of the Code, the debtor's prior misconduct may provide a sufficient justification for a denial of his motion to convert.

# SUPREME COURT OF THE UNITED STATES

_____

No. 05–996

_____

## ROBERT LOUIS MARRAMA, PETITIONER *v.* CITIZENS BANK OF MASSACHUSETTS ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIRST CIRCUIT

[February 21, 2007]

JUSTICE ALITO, with whom THE CHIEF JUSTICE, JUSTICE SCALIA, and JUSTICE THOMAS join, dissenting.

Under the clear terms of the Bankruptcy Code, a debtor who initially files a petition under Chapter 7 has the right to convert the case to another chapter under which the case is eligible to proceed. The Court, however, holds that a debtor's conversion right is conditioned upon a bankruptcy judge's finding of "good faith." Because the imposition of this condition is inconsistent with the Bankruptcy Code, I respectfully dissent.

I

The Bankruptcy Code unambiguously provides that a debtor who has filed a bankruptcy petition under Chapter 7 has a broad right to convert the case to another chapter. Title 11 §706(a) states:

"[A] debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title."

The Code restricts a Chapter 7 debtor's conversion right in two—and only two—ways. First, §706(a) makes clear that the right to convert is available only once: A debtor may convert so long as "the case has not been converted

[to Chapter 7] under section 1112, 1208, or 1307 of this title." Second, §706(d) provides that a debtor wishing to convert to another chapter must meet the conditions that are needed in order to "be a debtor under such chapter." Nothing in §706(a) or any other provision of the Code suggests that a bankruptcy judge has the discretion to override a debtor's exercise of the §706(a) conversion right on a ground not set out in the Code. Thus, a straightforward reading of the Code suggests that a Chapter 7 debtor has the right to convert the debtor's case to Chapter 13 (or another chapter) provided that the two express statutory conditions contained in §706 are satisfied.

This reading of the Code is buttressed by the contrast between the terms of §706 and the language employed in other Code provisions that give bankruptcy judges the discretion to deny conversion requests. As noted, §706(a) says that a Chapter 7 debtor "may convert" the debtor's case to another chapter. Chapters 11, 12, and 13 contain similar provisions stating that debtors under those chapters "may convert" their cases to other chapters. See §§1112(a), 1208(a), and 1307(a) (2000 ed. and Supp IV). Chapters 11, 12, and 13 also contain separate provisions governing conversion requests by other parties in interest. For example, the applicable provision in Chapter 11 provides:

> "On request of a party in interest and after notice and a hearing, *the court may convert* a case under this chapter to a case under chapter 11 of this title at any time." §706(b) (emphasis added).

See also §§1112(b), 1208(b), (d), and 1307(c).

In these sections, parties in interest are not given a right to convert. Rather, parties in interest are authorized to request conversion. And the authority to convert, after notice and a hearing, is expressly left to the discretion of the bankruptcy court, which "may convert" the case if the

general standard of "cause" is found to have been met. If the Code had been meant to give a bankruptcy court similar authority when a Chapter 7 debtor wishes to convert, the Code would have used language similar to that in §§1112(b), 1208(b), (d), and 1307(c). Congress knew how to limit conversion authority in this way, and it did not do so in §706(a).

In Chapter 7, Congress did directly address the consequences of the sort of conduct complained of in this case. In §727(a)(3), Congress specified that a debtor may be denied a discharge of debts if "the debtor has concealed . . . records, and papers, from which the debtor's financial condition or business transactions might be ascertained." The Code further provides that discharge may be denied if the debtor has "made a false oath or account" or "presented or used a false claim." §727(a)(4). In addition to blocking discharge, Congress could easily have deemed such conduct sufficient to bar conversion to another chapter, but Congress did not do so.

Instead of taking that approach, Congress included in the statutory scheme several express means to redress a debtor's bad faith. First, if a bankruptcy court finds that there is "cause," the court may convert or reconvert a Chapter 11 or Chapter 13 restructuring to a Chapter 7 liquidation. §§1112(b), 1307(c). Second, a Chapter 13 debtor must propose a repayment plan to satisfy the debtor's creditors—a plan that is subject to court approval and must be proposed in good faith. §§1325(a)(3), (4); accord, §1328(b)(2). Third, a debtor's asset schedules are filed under penalty of perjury. 28 U. S. C. §1746; Fed. Rule Bkrtcy. Proc. 1008. Fourth, a Chapter 13 case is overseen by a trustee who is empowered to investigate the debtor's financial affairs, to furnish information regarding the bankruptcy estate to parties in interest, and to oppose discharge if necessary. 11 U. S. C. §§704(4), (6) and (9). See also §1302(b) (defining the powers of a Chapter 13

trustee in part by reference to the powers of a Chapter 7 trustee).  These measures, as opposed to the "good faith" requirement crafted by the Court, represent the Code's strategy for dealing with debtors who engage in the type of abusive tactics that the Court's opinion targets.[1]

In sum, the Code expressly gives a debtor who initially files under Chapter 7 the right to convert the case to another chapter so long as the debtor satisfies the requirements of the destination chapter.  By contrast, the Code pointedly does not give the bankruptcy courts the authority to deny conversion based on a finding of "bad faith."  There is no justification for disregarding the Code's scheme.

## II

In reaching the conclusion that a bankruptcy judge may override a Chapter 7 debtor's conversion right based on a finding of "bad faith," the Court reasons as follows.  Under §706(d), a Chapter 7 debtor may not convert to another chapter "unless the debtor may be a debtor under such chapter."  Under §1307(c), a Chapter 13 proceeding may be dismissed or converted to Chapter 7 "for cause."  One such "cause" recognized by bankruptcy courts is "bad faith."  Therefore, a Chapter 7 debtor who has proceeded in "bad faith" and wishes to convert his or her case to Chapter 13 is not eligible to "be a debtor" under Chapter 13 because the debtor's case would be subject to dismissal or reconversion to Chapter 7 pursuant to §1307(c).  I cannot agree with this strained reading of the Code.

The requirements that must be met in order to "be a debtor" under Chapter 13 are set forth in 11 U. S. C. A. §109 (main ed. and Supp. 2006), which is appropriately titled "Who may be a debtor."  The two requirements that

––––––––––

[1] And as noted above, 11 U. S. C. §727(a)(4) also addresses such conduct, making it a bar to discharge, but not to conversion.

are specific to Chapter 13 appear in subsection (e). First, Chapter 13 is restricted to individuals, with or without their spouses, with regular income. Second, a debtor may not proceed under Chapter 13 if specified debt limits are exceeded.[2]

As the Court of Appeals below correctly understood, §706(d)'s requirement that a debtor may convert only if "the debtor may be a debtor under such chapter" obviously refers to the chapter-specific requirements of §109. *In re Marrama*, 430 F. 3d 474, 479, n. 3 (CA1 2005).

Rather than reading §§109(e) and 706(d) together, the Court puts §109(e) aside and treats §706(d) as a separate repository of additional requirements (namely, the absence of the grounds for dismissal or reconversion under §1307(c)) that a Chapter 7 debtor must satisfy *before* conversion to Chapter 13. But §1307(c) plainly does not set out requirements that an individual must meet in order to "be a debtor" under Chapter 13. Instead, §1307(c) sets out the standard ("cause") that a bankruptcy court must apply in deciding whether, in its discretion, an already filed Chapter 13 case should be dismissed or converted to Chapter 7. Thus, the Court's holding in this case finds no support in the terms of the Bankruptcy Code.

In holding that a bankruptcy judge may deny conversion based on "bad faith," the Court of Appeals appears to have been influenced by the belief that following the literal terms of the Code would be pointless. *Id.,* at 479–481.

---

[2] "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975 may be a debtor under chapter 13 of this title." §109(e) (Supp. 2006) (footnote omitted).

Specifically, the Court of Appeals observed that if a debtor who wishes to convert from Chapter 7 to Chapter 13 has exhibited such "bad faith" that the bankruptcy court would immediately convert the case back to Chapter 7 under §1307(c), then no purpose would be served by requiring the parties and the court to go through the process of conversion and prompt reconversion. *Id.,* at 481.

It is by no means clear, however, that conversion under §706(a) followed by a reconversion proceeding under §1307(c) would be an empty exercise. The immediate practical effect of following the statutory scheme is compliance with Bankruptcy Rule 1017(f), which applies Bankruptcy Rule 9014 to the reconversion. Fed. Rule Bkrtcy. Proc. 1017(e)(1). Rule 9014 (a), in turn, requires that the request be made by motion and that "reasonable notice and opportunity for hearing . . . be afforded the party against whom relief is sought." The Court's decision circumvents this process and forecloses the right that a Chapter 13 debtor would otherwise possess to file a Chapter 13 repayment and reorganization plan, 11 U. S. C. §1321, which must be filed in good faith and which must demonstrate that creditors will receive no less than they would under an immediate Chapter 7 liquidation, §§1325(a)(3) and (4); accord, §1328(b)(2). While the plan must be filed no later than 15 days after filing the petition or conversion, the debtor may file the plan at the time of conversion, *i.e.,* before the reconversion hearing. Fed. Rule Bkrtcy. Proc. 3015(b).

Moreover, it is not clear whether, in converting a case "for cause" under §1307(c), a bankruptcy court must consider the debtor's plan (if already filed) and, if the plan must be considered, whether the court must take into account whether the plan was filed in good faith, whether it honestly discloses the debtor's assets, whether it demonstrates that creditors would in fact fare better under the plan than under a liquidation, and whether the plan in

some sense "cures" prior bad faith. Today's opinion renders these questions academic, and little is left to guide what a bankruptcy court must consider, or may disregard, in blocking a §706(a) conversion.[3]

The Court notes that the Bankruptcy Code is intended to give a ""'fresh start"'" to the ""'honest but unfortunate debtor."'" *Ante,* at 1, 9 (quoting *Grogan* v. *Garner*, 498 U. S. 279, 286, 287 (1991)). But compliance with the statutory scheme—conversion to Chapter 13 followed by notice and a hearing on the question of reconversion— would at least provide some structure to the  process of identifying those debtors whose "'bad faith'" meets the Court's standard for consignment to liquidation, *i.e.,* "'bad faith'" conduct that is "atypical" and "extraordinary." *Ante*, at 10, n. 11.

### III

Finally, the Court notes two alternative bases for its holding. First, the Court points to 11 U. S. C. §105(a), which governs a bankruptcy court's general powers.[4] Second, the Court suggests that even without a textual basis, a bankruptcy court's inherent power may empower it to deny a §706(a) conversion request for bad faith. Obviously, however, neither of these sources of authority authorizes a bankruptcy court to contravene the Code. On the contrary, a bankruptcy court's general and equitable powers "must and can only be exercised within the con-

---

[3] Indeed, the only procedural guidance for such a situation is Federal Rule of Bankruptcy Procedure 1017(f)(2), which requires the filing of a motion to convert by the debtor and service thereof.

[4] "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." §105(a).

fines of the Bankruptcy Code." *Norwest Bank Worthing-ton* v. *Ahlers*, 485 U. S. 197, 206 (1988); accord, *SEC* v. *United States Realty & Improvement Co.*, 310 U. S. 434, 455 (1940) ("A bankruptcy court . . . is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act").

Ultimately, §105(a) and a bankruptcy court's inherent powers may have a role to play in a case such as this. The problem the Court identifies is a real one. A debtor who is convinced that he or she can successfully conceal assets has a significant incentive to pursue Chapter 7 liquidation in lieu of a Chapter 13 restructuring. If successful, the debtor preserves wealth; if unsuccessful, the debtor can convert to Chapter 13 and land largely where the debtor would have been if he or she had fully disclosed all assets and proceeded in Chapter 13 in the first instance.

Bankruptcy courts have used their statutory and equitable authority to craft various remedies for a range of bad faith conduct: requiring accountings or reporting of assets[5]; enjoining debtors from alienating estate property[6]; penalizing counsel[7]; assessing costs and fees[8]; or holding

———————

[5] See, *e.g.*, *In re All Denominational New Church*, 268 B. R. 536 (Bkrtcy. App. Panel CA8 2001) (affirming dismissal for failure to comply with required monthly reporting); *In re Martin's Aquarium, Inc.*, 225 B. R. 868, 880 (Bkrtcy. Ct. E. D. Pa. 1998) ("[A] debtor may, in an appropriate case, be required to produce an accounting, and . . . a bankruptcy court does indeed have the power to so order [this equitable remedy]").

[6] See, *e.g., In re Bartmann*, 320 B. R. 725, 732–733 (Bkrtcy. Ct. N. D. Okla. 2004); *In re Newport Creamery, Inc.*, 293 B. R. 293 (Bkrtcy. Ct. R. I. 2003); *In re Peklo*, 201 B. R. 331 (Bkrtcy Ct. Conn. 1996).

[7] See*, e.g.*, *In re Everly*, 346 B. R. 791, 797 (Bkrtcy. App. Panel CA8 2006) (bankruptcy court's §105 powers include authority to sanction counsel); *In re Brooks-Hamilton*, 329 B. R. 270 (Bkrtcy. App. Panel CA9 2005) (upholding sanction and suspension of debtor's counsel); *In re Washington*, 297 B. R. 662 (Bkrtcy. Ct. S. D. Fla. 2003).

[8] See, *e.g.*, *In re Deville*, 280 B. R. 483 (Bkrtcy. App. Panel CA9 2002); *In re Johnson*, 336 B. R. 568, 573 (Bkrtcy. Ct. S. D. Fla. 2006); *In re*

ALITO, J., dissenting

the debtor in contempt[9]. But whatever steps a bankruptcy court may take pursuant to §105(a) or its general equitable powers, a bankruptcy court cannot contravene the provisions of the Code.

Because the provisions of the Code rule out the procedure that was followed in this case by the bankruptcy court, I would reverse the judgment of the Court of Appeals.

––––––––––

*Couch-Russell*, No. 00–02226, 2003 W L 25273863 (Bkrtcy. Ct. Idaho 2003); *In re Gorshtein*, 285 B. R. 118 (Bkrtcy. Ct. S. D. N. Y. 2002).

[9] See, *e.g.*, *In re Sekendur*, 334 B. R. 609 (Bkrtcy. Ct. N. D. Ill. 2005) (imposing contempt sanction for serial and vexatious bankruptcy filing); *In re Tolbert*, 258 B. R. 387 (Bkrtcy. Ct. W. D. Mo. 2001) (same); *In re Swanson*, 207 B. R. 76 (Bkrtcy. Ct. N. J. 1997) (imposing civil contempt under §105 for failure to vacate property).