[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14354
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-00171-CG-N-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL TURNER,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(February 12, 2013)

Before TJOFLAT, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Michael Turner appeals his 27-month sentence following his convictions for one count of bankruptcy fraud and three counts of falsification of records[1] in a bankruptcy proceeding.  On appeal, Turner argues that the district court improperly calculated the amount of loss for his crimes under the sentencing guidelines.  After a thorough review of the record and briefs, we affirm.

On January 13, 2007, a fire destroyed one of Turner's rental properties in Prichard, Alabama.  Turner and Baldwin Mutual Insurance Company ("Baldwin"), the property's insurer, settled the claim for $40,000.  On January 31, 2007, Baldwin issued a check to Turner and Commonwealth National Bank ("Commonwealth"), which held a mortgage on the property.

On February 2, 2007, Turner filed a voluntary petition for Chapter 13 bankruptcy.  Commonwealth was one of Turner's creditors.  Three days later, Turner presented the $40,000 check to Commonwealth's branch manager.  Turner used $11,500 of the insurance proceeds to pay off the $11,500 mortgage on the rental property, and deposited the remaining balance of $28,500 into his sole proprietor checking account.

---

[1] In May 2012, we vacated one of Turner's four original convictions for falsification of records in a bankruptcy proceeding, and remanded the case to the district court for resentencing. *See United States v. Turner*, 477 F. App'x 598 (11th Cir. 2012) (per curiam).  On remand, the district court's judgment incorrectly stated that Turner was convicted on two counts of bankruptcy fraud and two counts of falsification of records.  We therefore instruct the district court to correct the judgment to reflect Turner's convictions for one count of bankruptcy fraud and three counts of falsification of records in a bankruptcy.  *See United States v. Wimbush*, 103 F.3d 968, 970 (11th Cir. 1997) (per curiam) (remanding a case for the sole purpose of correcting a scrivener's error in the judgment).

On April 3, 2007, Turner filed his bankruptcy schedules and Statement of Financial Affairs ("Statement").  These forms require the debtor to list personal property, real estate, bank accounts, income from the past two years, payments made to creditors, and debts.  In total, Turner's filings indicated that he owed approximately $471,788 in debt.  In both filings, Turner failed to disclose the $40,000 in insurance proceeds he had received in January.  He also indicated that the mortgage on the property was $50,000, when in fact it had been $11,500 before he paid it off on February 2.  On account of these inaccuracies, in November 2007 the bankruptcy trustee filed a motion to convert Turner's Chapter 13 bankruptcy into a Chapter 7 bankruptcy, which the bankruptcy court granted.[2]

In 2010, a grand jury returned a six-count indictment against Turner: Count 1 charged him with knowingly and fraudulently concealing the $40,000 check in a bankruptcy proceeding, in violation of 18 U.S.C. § 152(1); Counts 2–6 charged Turner with knowingly making false entries in his schedules and Statement of Financial Affairs, in violation of 18 U.S.C. § 1519.  As noted above, Turner was eventually convicted on one count of bankruptcy fraud and three counts of falsification of records in a bankruptcy proceeding.  With the amount of loss

---

[2] Under Chapter 7, the bankruptcy trustee discharges prepetition debts following the liquidation of the debtor's assets.  *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105, 1107 (2007).  The debtor's nonexempt assets are controlled by the bankruptcy trustee.  *See id.*  Under Chapter 13, by contrast, an individual sets up a payment plan approved by the bankruptcy court, and the debtor retains possession of his property.  *See id.*

calculated at $40,000, Turner's sentencing guidelines advisory range was 27 to 33 months.  Turner received a 27-month sentence.  The sole issue on this appeal is whether the district court committed clear error when it calculated the amount of loss at $40,000.

We review for clear error the district court's determination of the amount of loss in calculating sentencing guidelines,  *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir. 2011), *cert. denied* 132 S. Ct. 1066 (2012), and we review de novo the district court's interpretation of the sentencing guidelines.  *United States v. Jordi*, 418 F.3d 1212, 1214 (11th Cir. 2005).  The sentencing guidelines do not require a precise determination of the loss, but instead only a reasonable estimate.  *Barrington*, 648 F.3d at 1197.

The guidelines provide that "loss is the greater of actual loss or intended loss."  U.S.S.G. § 2B1.1 cmt. n.3(A).  "Intended loss" is the pecuniary harm that was intended to result from the offense.  *Id.* at cmt. n.3(A)(ii).  Turner argues that the amount of loss for his sentencing purposes should be reduced from $40,000 to $28,500 because he returned $11,500 to Commonwealth, one of his creditors, before the crime was detected.  In support of this argument, Turner relies on the commentary to § 2B1.1:

> **(E) Credits Against Loss.**—Loss shall be reduced by the following:
>
> **(i)** The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons

acting jointly with the defendant, to the victim before the offense was detected. The time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency.

*Id.* at cmt. n.(3)(E) (the "credits-against-loss provision"). We disagree.

The credits-against-loss provision does not grant a debtor in bankruptcy license to distribute his non-exempt property among creditors according to his own whim. That responsibility falls to the bankruptcy trustee. Unlike the case where a thief returns stolen chattel before his crime's detection, the *actus reus* in this case was the concealment of assets, rather than the larceny of property. If Turner sincerely sought the refuge of the credit-against-loss provision, he ought to have exposed what he previously hid. In other words, to receive credit against loss, the entire $40,000 should have been disclosed to the trustee for the benefit of Turner's unsecured creditors. Turner did not do so.

The Bankruptcy Code offers a "fresh start" to the "*honest* but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S. Ct. 654, 659 (1991) (emphasis added) (internal quotation marks omitted). Turner's dishonest mortgage payment does not fall within the scope of the credit-against-loss provision. In sum, we find no clear error in the district court's estimate of the loss in this case, because Turner concealed $40,000 in insurance proceeds from the bankruptcy

estate.  *See Barrington*, 648 F.3d at 1197 (requiring only a reasonable estimate of the loss).

The 27-month sentence imposed by the district court is affirmed.  The case is remanded to the district court for the sole purpose of correcting the judgment, which should reflect that Turner was convicted of one count of bankruptcy fraud, in violation of 18 U.S.C. § 152(1), and three counts of falsification of records in violation of 18 U.S.C. §1519.

**AFFIRMED IN PART AND REMANDED WITH DIRECTIONS.**