MEMORANDUM OPINION AND ORDER ON TRUSTEE'S OBJECTION TO DEBTOR'S HOMESTEAD EXEMPTION (DOC. NO. 19)
Judge Caldwell *354 This Memorandum Opinion and Order resolves an Objection to Debtor's Homestead Exemption. Chapter 7 Trustee Susan L. Rhiel (Trustee), filed the Objection, and Edward R. Montgomery (Debtor) responded. Based upon testimony and the pleadings, the Court finds and concludes that the Trustee has failed to sustain her burden of proof, and overrules the Objection. The bases for this ruling follow.
Focusing initially on the homestead exemption provision, the Court observes that it is straightforward. The Ohio legislature saw fit to generally protect the residences of the financially distressed by plainly covering, "...one parcel or item of real or personal property that the person or a dependent... uses as a residence." OHIO REV. CODE ANN. § 2329.66(A)(1)(b). That's it-no further detail or information as to type, size, shape, quality, etc., required. It simply covers property used as a residence.
The Trustee, however, proclaims that Debtor is not due the homestead exemption in the house and the ground underneath, merely because he lives in a camper that sits nearby on the same dirt. Further, the Trustee protests that Debtor's, non-dependent grandson lives in the house. Such complications as to how residents and their families live on their property, however, were not addressed by the Ohio legislature.
We now turn to the story behind this litigation. To be close to his family, Debtor bought property on September 27, 2016, that included a two-bedroom house located at 1954 Laurel Ridge Road, Piketon, Ohio 45661 (Laurel Ridge). He paid $10,000.00, based upon an unsecured loan from Atomic Credit Union, Inc. Upon completion of repairs, Debtor planned to move from a rental property to Laurel Ridge. The Debtor is approximately 78 years old, and his daughter, Kelly S. Sartin (Kelly), lives across the road with her family. Debtor included Kelly's name on the deed so she may inherit Laurel Ridge. Kelly did not contribute any funds towards the purchase.
At the time of purchase, the house was not livable, including garbage removal, plumbing, electrical, cabinet, drywall, and ceiling replacements. Upon repair, Debtor planned to move into the house; however, six months later in March 2017, he had heart surgery. In the interim, Kelly, her husband Robert Sartin, and Debtor's grandson, Tyler Sartin (Tyler), repaired the house with their funds, and Tyler occupied the house so it could be insured. Tyler's fiancée and their child also now live in the house, and they do not presently pay rent, subject to change.
To recover from the heart surgery, Debtor lived in Kelly's home across the road for six weeks. Once able, Debtor moved onto Laurel Ridge in August 2017, in a two-bedroom travel camper with a kitchen, owned by the Sartins. At that point there was no room for him in the house. Debtor pays $300.00 per month for use of the camper. While it is on wheels, and is not attached to a deck or porch, the camper has been hooked to the electric and water supplies of the house. These utilities are in Debtor's name.
While Debtor does not have keys to the house, he uses it for meals, laundry and *355 showers. In addition, he slept in the house on the couch when the camper pipes froze, during the winter of 2019. To enter the house, he knocks on the door, but if there is no answer he walks in. Debtor retrieves his mail from a post office box, and Tyler uses the Laurel Ridge mailbox. The camper sits directly behind the house, and has not been moved since August 2017. Debtor's belongings are in the camper, he typically sleeps inside, and plans to remain there after repairs to the frozen plumbing.
Approximately a year after the move to Laurel Ridge, Debtor filed this bankruptcy case on October 11, 2018, under Chapter 7 of the United States Bankruptcy Code (Code). That same day, Debtor listed Laurel Ridge on Schedule A ("legal or equitable interest in any residence, building, land, or similar property"). He assigned a value of $83,330.00. Debtor also claimed the Ohio homestead exemption for Laurel Ridge on Schedule C. OHIO REV. CODE ANN. § 2329.66(A)(1)(b). To date, creditors filed nine claims that total $70,805.77. This sum includes the unsecured claim of Atomic Credit Union, Inc., related to the purchase of Laurel Ridge. The note has a remaining balance of $4,904.86.
The Trustee objected to Debtor's homestead exemption on November 16, 2018, on two grounds as earlier discussed. First, the Trustee correctly points out that Debtor lived in the camper located at Laurel Ridge, rather than the adjacent house, on the date of the bankruptcy filing. Second, the Trustee accurately notes that this same house is occupied by Debtor's grandson Tyler and family, and Tyler is not a dependent. As a result, the Trustee declares that all of Laurel Ridge is not Debtor's residence, for purposes of the Ohio homestead exemption.
Parsing the Ohio homestead exemption in this manner, Trustee recommends that this Court deprive the Debtor of an exemption in any portion of Laurel Ridge. So, then the Debtor loses his interest in Laurel Ridge, along with the funds he has paid over time on the $10,000.00 note (approximately $5,095.14). Kelly, Debtor's daughter, then becomes a co-owner of Laurel Ridge with the Trustee, after her family invested their time and funds to make the house livable. How to account for these expenditures is unknown. Further, should the Trustee prevail, she could seek to sell Debtor's former interest, as well as that of his daughter Kelly. 11 U.S.C. § 363(h)(1)-(3).
In view of this snowball effect and lack of statutory support, the Court instructed the parties to research and provide any caselaw directly on point with the Trustee's stance. As noted in the Trustee's brief, the camper "can easily be unhooked from the electricity and water and be relocated across the street to his daughter's property or to a mobile home park." However, the Trustee as movant, could not find any supporting cases directly on point, but offered ones deemed similar. Yet, the Court does not find them persuasive for the complex circumstances of this case.
Here, we have a family that has figured out a way to live close to and support each other, including the 78-year-old Debtor. He bought Laurel Ridge on his own, while family members, that live across the road, renovated the house using their funds and labor. The Debtor wanted to be close to his family, even placing his daughter Kelly on the deed as an inheritance. Debtor's grandson Tyler then moved into the house so it could be insured, while Debtor recovered from heart surgery at Kelly's home across the road. When well enough Debtor moved onto Laurel Ridge in the camper that sits behind the house, already occupied by Tyler and family.
*356 The Court now turns to the law applicable and related to homestead exemptions, and will discuss six factors it found most persuasive. First, as a general rule, bankruptcy judges must construe exemptions liberally in favor of debtors, and resolve doubts in their favor. In re Lewis , 327 B.R. 645, 648 (Bankr. S.D. Ohio 2005) (internal citation omitted). Second, exemption laws are broad; they exist to allow debtors to retain essential property, and promote the fundamental principle of the bankruptcy "fresh start." In re Kimble , 344 B.R. 546, 550 (Bankr. S.D. Ohio 2006). Even after the most recent amendments to the Code in 2005 (BAPCPA), that is our primary purpose. Marrama v. Citizens Bank of Massachusetts, et al. , 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007) (citing Grogan v. Garner , 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ).
Third, the party objecting to an exemption claim bears the burden of proof by a preponderance of the evidence. Fed. R. Bankr. P. 4003(c) ; Kimble , 344 B.R. at 551. Fourth, this balance in favor of debtors and their families does not end here. It also surfaces where trustees prevail in denying exemptions, assume debtors' property interests, and then seek to sell them, along with the rights of non-debtor co-owners. Indeed, the Code provision applicable to such sales requires trustees to prove, among other things, that "...the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners ...." 11 U.S.C. § 363(h)(3).
As this sale language suggests, it sets a high bar to obtain approval of co-owner sales. See Rhiel v. Central Mortgage Co., et al. (In re Kebe) , 2014 WL 8276561, at *16 (Bankr. S.D. Ohio Dec. 23, 2014) (denying trustee's sale of property which would have caused non-debtor co-owner, who lived in house with spouse and children, significant detriment while netting relatively modest recovery for the estate); Lewis v. Harlin (In re Harlin) , 325 B.R. 184, 191 (Bankr. E.D. Mich. 2005) (detriment imposed on non-debtor co-owner by forcing her out of her home to pay the debtor's debts far outweighed any benefit to the estate); Hunter v. Levesque (In re McCoy) , 92 B.R. 750, 752-53 (Bankr. N.D. Ohio 1988) (trustee could not sell where psychological, emotional, and financial detriment to non-debtor co-owner outweighed minimal financial benefit of sale to the estate).
Fifth, to claim Ohio's homestead exemption, a debtor must show only (1) an interest in property; and (2) that the debtor or a dependent uses that property as a residence. Ohio Rev. Code Ann. § 2329.66(A)(1)(b) ; Kimble , 344 B.R. at 551-55. Here, the parties are at odds over whether Debtor used Laurel Ridge as his residence on the date of the bankruptcy filing.
Sixth, as stated earlier, neither Ohio's exemption statute nor the Code define "residence" for homestead exemption purposes. Nor does the wording of the exemption statute exclude campers, or limit the exemption to only permanent, or semi-permanent structures, such as mobile homes, that are not readily removeable. Yet, courts addressing the meaning of "residence" have simply defined it as property that a debtor occupies and uses as a home. E.g. , In re Wallace , 2016 WL 829833, at *2 (Bankr. N.D. Ohio Mar. 2, 2016). Simply, the Trustee has failed to present any persuasive authority that separates Laurel Ridge and the house from the camper. There is no basis for this Court to treat one as a residence, while not the other.
In sum, given the facts and the law detailed above, the Court finds and concludes that the Trustee has failed to sustain her burden of proof. There is no dispute *357 that Debtor lived in a camper at Laurel Ridge from August, 2017, to the date of bankruptcy filing on October 11, 2018. Debtor purchased Laurel Ridge to be near his family that live across the road. The camper has been hooked to the water and electric supply of the house, and the utilities are in the Debtor's name. The Debtor enters the house at will, and uses it for meals, laundry and showers. In addition, he slept in the house on the couch when the camper pipes froze during the winter of 2019. Finally, the camper sits directly behind the house, and has not been moved since August 2017. All these factors lead the Court to find and conclude that the Debtor has access to and uses all the structures, on wheels or not, that sit on the Laurel Ridge soil. All these possessions are Debtor's residence.
For all these reasons, the Court finds and concludes that the Trustee failed to sustain her burden of proof, and the Court OVERRULES the Trustee's Objection.
IT IS SO ORDERED.