**In re 239 WORTH AVENUE CORP., Debtor.**

**Bankruptcy No. 99–31940–BKC–SHF.**

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Aug. 4, 1999.

Thomas DeCarlo, West Palm Beach, FL, for the debtor.

James B. Miller, Miami, FL, for Siegelson' Diamonds, Inc., M.B. Altman Sons, R.T. Jewelers, Inc. and Twin Jewelry Company.

Steven J. Solomon, for E & S Jewelry Inc. and Barber Bros. Jewelry Mfg. Inc.

## ORDER OF DISMISSAL

STEVEN H. FRIEDMAN, Bankruptcy Judge.

THIS MATTER came before the Court on July 19, 1999 for an evidentiary hearing on the motion of creditors Siegelson's Diamonds, Inc., M.B. Altman Sons, R.T. Jewelers, Inc. and Twin Jewelry Company (collectively the "Creditors"), to dismiss the Debtor's bankruptcy case. Having considered the evidence presented, the argument of counsel and for the reasons set forth below, the Court grants the Creditors' motion and dismisses this case.

This case was commenced on April 22, 1999, with the Debtor's filing of its voluntary chapter 11 petition. The Debtor, 239 Worth Avenue Corp. d/b/a Samuel Harold Jewelers, has been in business for approximately 30 years, selling "high end" jewelry. Most of the Debtor's inventory is owned outright by the Debtor, while some of the inventory is held by the Debtor on consignment. The Creditors allege that the Debtor is holding valuable items on consignment which belong to the Creditors. Although the Debtor disputes whether the Creditors are properly secured under Article 2 of the Uniform Commercial Code, it does not dispute that it possesses certain items belonging to the Creditors. The issue of whether the Creditors are properly secured is not of any moment to the Court in rendering its decision. Rather the Court focuses on the manner in which the Debtor has conducted its business since the filing of the bankruptcy.

Harold Lazow is the President of the Debtor. He began the company in partnership with one Samuel Herlich, who no longer is a principal of the Debtor. Harold Lazow is currently 82 years old and has turned over control of the company to his son Joseph. According to the testimony of Harold Lazow, Joseph is the only person who decides what jewelry the Debtor should buy for resale. According to the testimony of Herbert Herman, the Debtor's bookkeeper, all payments issued by the Debtor are at Joseph's direction. It is clear that this family business is operated primarily by Joseph Lazow.

Pre-petition, Joseph Lazow gave little deference to the separation of personal expenses and business expenses when operating the Debtor. The Debtor paid for Joseph's car payments; Harold's home mortgage payment; dry cleaning for Joseph and Harold; gasoline to operate the cars of Joseph, Harold and Martha Lazow; life insurance premiums on Harold Lazow's life; insurance premiums on cars owned by Harold and Martha Lazow; a salary to Martha of $300 a week for com-

ing into the Debtor's premises for an hour a day; and a salary to Harold of $500 a week plus commissions for working three hours a day. For the moment, the Court is not concerned with how the Debtor operated pre-petition. However, once the Debtor filed its bankruptcy petition, it became a fiduciary to its creditors. As a debtor-in-possession, the Debtor is obligated to protect and conserve property in its possession. *In re Sal Caruso Cheese, Inc.*, 107 B.R. 808, 816 (Bankr.N.D.N.Y.1989).

Post-petition, the Debtor has continued to make payments: (1) on Joseph's car; (2) for gas and insurance for the cars of Joseph, Harold and Martha; (3) on the life insurance policy on the life of Harold Lazow under which policy the Debtor **is not** the beneficiary; and (4) for salaries to Joseph, Harold and Martha at the same rate they were receiving pre-petition. More telling of Joseph Lazow's disdain for the requisites of the bankruptcy process is that, without court approval, the Debtor: paid a pre-petition obligation due the Internal Revenue Service for $7,930; altered a repayment agreement with another creditor, Wexler Insurance, to cure pre-petition defaults; entered into a post-petition financing agreement with a new vendor, Imperial Jewelry Corp.; and entered into an arrangement whereby assets of the Debtor were transferred to an unaffiliated entity co-owned by Joseph Lazow.

### Internal Revenue Service Payment

■ Pre-petition, the Debtor owed the IRS $7,930. This debt was a pre-petition priority debt which the Debtor decided to repay. Despite the fact that the IRS may hold a priority position under Section 507 of the Bankruptcy Code, no provision of the Bankruptcy Code authorizes post-petition payment of a pre-petition debt without court approval. *In re Air Florida Systems, Inc.*, 50 B.R. 653, 660 (Bankr. S.D.Fla.1985).

### Wexler Insurance Payment Arrangement

Although it was not made clear by the evidence whether Wexler Insurance Com-

pany is an insurance broker or an insurance premium financing company, it is not relevant to the examination of the Debtor's conduct. In order to pay its annual insurance premium of $100,000, the Debtor financed the premium through Wexler, paying Wexler approximately $2,000 per week. Pre-petition, the Debtor fell behind on its premium payments. To cure this arrearage, the Debtor unilaterally and without court approval agreed to increase its installment payments to Wexler to $3,000 per week. Certainly the maintenance of insurance is crucial to the Debtor's business, and a proper motion to pay the pre-petition debt may have been approved. However, in his indifference to the duties and responsibilities of a debtor-in-possession, Joseph Lazow decided to increase the installment payments to Wexler without court approval.

### Imperial Jewelry Financing Agreement

■ On June 3, 1999, the Debtor entered into a "Credit Agreement" with Imperial Jewelry Company, a jewelry manufacturer, to purchase merchandise for an aggregate price of $34,000. At first glance, this agreement appears to be one originating in the ordinary course of the Debtor's business. However, pursuant to the terms of repayment, the Debtor obligated itself to pay Imperial $17,000 at the time of execution of its agreement, and thereafter to pay $5,517 per month for the next three months. Under the terms of the agreement, there is no doubt that it is a post-petition financing agreement, approval of which is subject to notice and a hearing. *See,* 11 U.S.C. § 364.

### Highlands Fine Art and Estate Jewelry

During the course of this bankruptcy, Joseph Lazow, individually, entered into a partnership with one Bruce Shelton. The two individuals own a company known as Highlands Fine Art and Estate Jewelry Corporation. To provide Highlands with

merchandise, Joseph has taken items of inventory worth at least $100,000 from the Debtor and "sold" them to Highlands. However, there exists no agreement between the Debtor and Highlands concerning the sale or transfer of this jewelry. Rather, the Debtor purportedly has sold the jewelry to Highlands for 20% above the Debtor's price, but the Debtor is not to be paid by Highlands until *after* Highlands sells the jewelry. Currently, the Debtor has transferred six pieces of jewelry to Highlands which presently are "consigned" to the Debtor. Because Highlands has not sold these items, the Debtor has not been paid, nor have its consignors, on the six pieces of jewelry.

### Discussion

When deciding whether a case should be dismissed for lack of good faith, a court must consider the totality of the circumstances. A court's determination that dismissal for bad faith is warranted *"involves finding an intent to abuse the judicial process and the purposes of the reorganization process, which may include the breach of a debtor's fiduciary duty." In re Sal Caruso Cheese, Inc.*, 107 B.R. at 816. Criteria which have warranted the dismissal of cases include a debtor's transfer of property of the estate in a manner not consistent with the Bankruptcy Code, *In re Wells*, 71 B.R. 554, 557 (Bankr.N.D.Ohio 1987); and a debtor's unauthorized payment to pre-petition general unsecured creditors, *In re 3868–70 White Plains Rd., Inc.*, 28 B.R. 515 (Bankr. S.D.N.Y.1983). This Debtor's actions of paying pre-petition obligations without court authorization, entering into unauthorized post-petition financing arrangements, and diverting the Debtor's assets to provide inventory for a new company owned partially by the Debtor's principal, evidence a profound disregard for the fiduciary duty owed by this Debtor, and jeopardizes the interest of creditors. When a debtor fails to comply with the terms of the Bankruptcy Code and continues to operate in disregard to its creditors' inter-

ests, a court has no alternative other than to dismiss the case. As stated by the court in *In re NuGelt, Inc.*, 142 B.R. 661, 668 (Bankr.D.Del.1992), "[i]f a debtor chooses to seek the protection of the bankruptcy court, it must play by the rules." The Debtor in this case has not "played by the rules". Rather, the Debtor, through Joseph Lazow, has continued to operate the business to maximize the benefit to be conferred upon Joseph Lazow and his parents, in disregard to the legitimate interests of creditors and the provisions of the Bankruptcy Code. The Debtor has used the bankruptcy process as a shield against its creditors without deference to the accountability required by the Bankruptcy Code. If a debtor cannot comply with the requirements of the Code, it is not entitled to the protections which the Code affords. Accordingly, it is

**ORDERED** that the Creditors' motion to dismiss is granted. This case is dismissed with prejudice for a one year period.