In re Stephen L. SCHULTZ, Debtor.

No. 3:09–bk–7020–PMG.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 22, 2010.

Wendell Finner, Wendell Finner, PA, Jacksonville Beach, FL, for Debtor.

Elena L. Escamilla, United States Trustee, Orlando, FL, for U.S. Trustee.

## ORDER ON (1) MOTION TO DISMISS CASE AND (2) MOTION TO CONVERT CASE TO CHAPTER 13

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider (1) the Motion to Dismiss Case filed by Dr. Cynthia Justice (Justice), and (2) the Motion to Convert Case to Chapter 13 filed by the Debtor, Stephen L. Schultz.

Justice asserts that this Chapter 11 case should be dismissed for "cause" pursuant to § 1112(b)(1) of the Bankruptcy Code.

The Debtor asserts that conversion of this case to a case under Chapter 13, pursuant to § 1112(d) of the Bankruptcy Code, is in the best interest of his creditors and the estate.

## I. Background

The Debtor is the former husband of Justice. On May 24, 2007, the parties signed a Separation Agreement in connection with their divorce. As part of the stipulated settlement in the divorce, the Debtor signed a Promissory Note in the amount of $250,000.00 payable to Justice. (Tr. p. 14). The Debtor never made any payments on the Note. (Tr. p. 15).

The Debtor relocated from Colorado to Florida in or around March of 2008. (Doc. 1, Statement of Financial Affairs, Question 15).

In February of 2009, Justice obtained a judgment in Colorado for the amount of the Note, and subsequently domesticated the judgment in Florida. (Tr. p. 15). In June, 2009, Justice took action in Florida to execute on the judgment. (Tr. p. 15). The Debtor's vehicle was seized, and his bank account was garnished. (Tr. p. 15).

On August 21, 2009, the Debtor filed a Petition under Chapter 11 of the Bankruptcy Code.

The Debtor did not list any real property on his schedule of assets filed with the Petition.

According to the schedule of assets, the Debtor's personal property includes a 2007 Chevrolet Tahoe ($23,825.00), household

furnishings ($6,670.00), an account receivable for the sale of an automobile ($3,700.00), a security deposit with his landlord ($3,050.00), office equipment ($2,790.00), and miscellaneous personal effects and sports equipment ($2,550.00). The scheduled value of his personal property totals $42,936.02.

On his Schedule C, the Debtor claimed that personal property valued at $23,135.00 is exempt pursuant to § 522(d)(2), § 522(d)(3), and § 522(d)(5) of the Bankruptcy Code. No objection has been raised to the Debtor's claims of exemptions.

On his schedule of liabilities, the Debtor listed Justice as a creditor holding a secured claim on his personal property. The total amount of Justice's claim is scheduled as $250,000.00, and the "total value of the lien" is scheduled as undetermined.

The Debtor also listed his landlord as a creditor holding a security interest in his lease deposit, and the Schultz Irrevocable Trust as a creditor holding a secured claim in the amount of $22,800.00. According to the Debtor, the Schultz Irrevocable Trust's secured claim is based on a loan that he obtained from the Trust to pay the legal fees incurred in connection with his bankruptcy case. (Transcript, p. 17).

Finally, on his schedule of liabilities, the Debtor listed unsecured claims in the total amount of $36,231.43. The unsecured claims are generally described as arising from either credit card purchases or "various collections." According to the Debtor, the liabilities scheduled as unsecured claims were incurred in 2000 or 2001, approximately eight years prior to the filing of the bankruptcy petition. (Transcript, pp. 19–21). None of the entities listed as unsecured creditors were suing the Debtor or attempting to seize any of his assets at the time that the bankruptcy petition was filed. (Transcript, pp. 15–16).

The Debtor was not employed or engaged in any business at the time that he filed his Chapter 11 Petition, and he testified that he has not earned any "regular income" since 2008. (Transcript, p. 32). His Statement of Financial Affairs shows that he received no income from employment or from operation of his business in 2007, 2008, or from the beginning of 2009 until the case was filed. The Statement of Financial Affairs also shows that he received other income of only $4,841.00 and $8,458.00 during the two years immediately preceding the commencement of this case.

Although he is the sole shareholder of an entity known as Integrated Global Solutions, Inc., the company has no assets and no employees, and has not earned any revenue for approximately two years. (Transcript, pp. 33–34). He listed his interest in the company on his bankruptcy schedules as having a value of $0.00.

The Debtor's livelihood is derived from his beneficial interest in two Trusts, which he describes as follows:

Debtor is beneficiary of the Frank L. Schultz Irrevocable Trust established February 3, 1993. Pursuant to the terms of the agreement establishing this trust, debtor may not anticipate, encumber or transfer his interest, which interest may not be charged, garnished or attached by creditors. Debtor's interest in the trust is not property of the bankruptcy estate. Its value is unknown.

Debtor is beneficiary of a testamentary trust established by the Last Will and Testament of Frank L. Schultz dated April 5, 2005. Pursuant to the terms of the will establishing this trust, debtor may not anticipate, encumber or transfer his interest, which interest may not be charged, garnished or attached by creditors. Debtor's interest in the trust

is not property of the bankruptcy estate. Its value is unknown.

(Doc. 1, Schedule B). The Trust documents contain spendthrift provisions which prohibit the Debtor from anticipating, transferring, or encumbering his interest in the Trusts, as indicated in his Schedules. (Justice's Exhibit 10, Article XI; Justice's Exhibit 11, Paragraph 1.10).

The Irrevocable Trust had a total account value of $147,232.55 as of September 30, 2009, and the Testamentary Trust had a total account value of $819,567.26 as of September 30, 2009. (Justice's Exhibits 2, 3).

According to the Debtor's schedules, his "sole source of funds consists of distributions from the Frank L. Schultz Irrevocable Trust established February 3, 1993." (Doc. 1, Addendum to Schedule I). On his schedule of monthly income, the Debtor stated that his distributions from the Frank L. Schultz Irrevocable Trust were $4,500.00 per month. The Debtor testified at trial, however, that the distributions from the Irrevocable Trust cease in May of 2010, and he will receive distributions of $4,000.00 per month from the Testamentary Trust at that time. (Transcript, pp. 42–43). No other income is listed on his schedules.

On his schedule of expenses filed with the Petition, the Debtor stated that his current expenditures totaled $6,617.00 per month. The expenditures included $1,000.00 per month for food, $200.00 per month for clothing, $500.00 per month for medical and dental expenses and a separate $450.00 per month for health insurance, $340.00 per month for recreation, $525.00 per month for personal care and grooming, and $100.00 per month for "vet bills," even though no animals are listed on his schedules.

According to the Debtor's schedules, therefore, his monthly net income was neg-ative $2,117.00 at the time that he filed his Chapter 11 case in August of 2009. ($4,500.00 minus $6,617.00 = negative $2,117.00).

On December 21, 2009, the Debtor filed a Chapter 11 Plan of Reorganization. (Doc. 39). The proposed Plan provides that the Debtor "will pay a total of $400.00 each month for 60 months on account of allowed claims, in the priority shown below." Consequently, the Debtor proposes to pay the total sum of $24,000.00 to his creditors during the five-year life of the Plan. ($400 × 60 months = $24,000.00). The claims to be paid under the Plan consist of (1) the secured claim of Justice to the extent it is allowed, and (2) unsecured claims, which would be paid pro rata after Justice's allowed secured claim has been paid in full.

On January 4, 2010, the Debtor filed a Disclosure Statement. (Doc. 43). Article III of the Disclosure Statement provides:

**ARTICLE III—MR. SCHULTZ' BANKRUPTCY FILING**

Mr. Schultz is an individual residing in the Middle District of Florida. From the time the bankruptcy case was commenced through the filing of this Disclosure Statement, Mr. Schultz was unemployed and had no income.

Mr. Schultz's Chapter 11 filing was precipitated by the execution and seizure of his bank account and motor vehicle by a creditor. After attempting without success to negotiate revised payment terms with the affected creditor, Mr. Schultz commenced this Chapter 11 proceeding.

(Doc. 43, p. 7). The Disclosure Statement does not contain a proposed budget or specific projection of income and expenses during the life of the Plan. Instead, Article V of the Disclosure Statement provides:

## ARTICLE V—OPERATING PROJECTIONS

. . .

### A. Forecasts and Projections.

The Debtor does not, as a matter of course, make long-range external forecasts or projections of anticipated financial position or results of operation. The Debtor has reported his cash receipts and expenses as of the Petition Date as accurately as possible.

### B. Projected Receipts.

Commencing May, 2010, Mr. Schultz is entitled to receive $4,000.00 per month in mandatory distributions from the testamentary trust established by the Last Will and Testament of Frank L. Schultz dated April 5, 2005. These distributions are anticipated to continue throughout the term of the Plan.

(Doc. 43, p. 9). In other words, the Debtor proposes to fund his Chapter 11 Plan from the monthly distributions of $4,000.00 received from the Testamentary Trust.

The postpetition Monthly Operating Reports filed by the Debtor in this case reflect that his cash disbursements in September 2009 were $4,950.00, his cash disbursements in October 2009 were $4,730.48, his cash disbursements in November 2009 were $4,021.70, his cash disbursements in December 2009 were $3,963.16 (not including the prepayment of rent for January and "cash held toward Plan payments"), and his cash disbursements in January 2010 were $3,408.68 (including January rent, but not including "cash held toward plan payment."). (Justice's Exhibits 4, 5, 6, 7, 8). Consequently, given the Debtor's "projected receipts" of $4,000.00 per month, funds would have been available for the proposed $400.00 payments under the Plan in only one out of the five months reported.

Additionally, the Debtor testified that the Irrevocable Trust has withheld the sum of $500.00 per month, postpetition, as repayment of the $22,800.00 loan that he received from the Trust to pay the legal fees incurred in connection with his bankruptcy case. (Transcript, pp. 18–19). It is unclear whether the Debtor proposes to repay the $22,800.00 loan under his Plan, whether the Trust has received preferential treatment of its prepetition loan, or whether the obligation to the Trust will continue to reduce the monthly payments received by the Debtor.

## II. The Motion to Dismiss

Justice asserts that the Debtor's Chapter 11 case should be dismissed for "cause" pursuant to § 1112(b)(1) of the Bankruptcy Code. Section 1112(b)(1) provides:

**11 USC § 1112. Conversion or dismissal**

. . .

■ (b)(1) Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, *absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.*

11 U.S.C. § 1112(b)(1) (Emphasis supplied). Under § 1112(b)(1), the initial burden rests with the moving party to establish "cause" for dismissal or conversion. If the moving party establishes "cause," the burden shifts to the debtor to show that the case falls within the "unusual circum-

stances" exception to § 1112(b)(1)'s mandatory dismissal or conversion. *In re Miell,* 419 B.R. 357, 366–67 (Bankr. N.D.Iowa).

Section 1112(b)(4) sets forth a nonexhaustive list of grounds that may constitute "cause" for dismissal or conversion. In this case, Justice contends that the case should be dismissed for two primary reasons. First, Justice asserts that the case should be dismissed for the reason listed in § 1112(b)(4)(A) of the Bankruptcy Code, because of the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation."

■ Second, Justice asserts that the case should be dismissed based on the Debtor's lack of good faith in filing the petition. A debtor's lack of good faith is generally recognized as an independent basis for dismissal under § 1112(b)(1), because good faith is an implicit requirement for every Chapter 11 petition. *In re Joyce, Don & Associates, Inc.,* 2008 WL 343265, at *2 (Bankr.M.D.Fla.).

### III. The Motion to Convert Case to Chapter 13

The Debtor asserts that his case should be converted to a case under Chapter 13, rather than dismissed, because conversion to a Chapter 13 is in the best interest of creditors and the estate.

■ Section 1112(d) of the Bankruptcy Code provides:

**11 USC § 1112. Conversion or dismissal**

. . .

(d) The court may convert a case under this chapter to a case under chapter 12 or 13 of this title only if—

(1) the debtor requests such conversion;

(2) the debtor has not been discharged under section 1141(d) of this title; and

(3) if the debtor requests conversion to chapter 12 of this title, such conversion is equitable.

11 U.S.C. § 1112(d). Section 1112(d) permits a Court to exercise its discretion in determining whether to convert a Chapter 11 case to a case under Chapter 13. Section 1112(f), however, provides that "such a conversion is permissible only if the Chapter 11 debtor originally would have qualified as a debtor under Chapter 13." *In re De Jounghe,* 334 B.R. 760, 766 (1st Cir. BAP 2005). Section 1112(f) provides:

**11 USC § 1112. Conversion or dismissal**

. . .

(f) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title *unless the debtor may be a debtor under such chapter.*

11 U.S.C. § 1112(f) (Emphasis supplied). In *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007), the Supreme Court of the United States considered the circumstances under which a debtor "may be a debtor" under Chapter 13 for purposes of conversion to that chapter.

■ In *Marrama,* the Supreme Court found that a debtor may not qualify as a Chapter 13 debtor if "cause" otherwise exists to dismiss the case under § 1307(c) of the Bankruptcy Code. The Supreme Court further recognized that prepetition bad faith conduct is "cause" for dismissal under that section, and concluded that such bad faith conduct is "tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Marrama,* 549 U.S. at 374, 127 S.Ct. 1105. "There is an inherent requirement of good

faith in chapter 13 cases." *In re Letterese,* 397 B.R. 507, 511 (Bankr.S.D.Fla.2008).

### IV. The Debtor's lack of good faith

The Court finds that the Debtor in this case did not file his bankruptcy petition in good faith as required by § 1112(b)(1) or § 1307(c) of the Bankruptcy Code.

■ Determinations of good faith should be made on a case by case basis after evaluating the totality of the circumstances. *In re Letterese,* 397 B.R. 507, 512–13 (Bankr.S.D.Fla.2008)(citing *In re Kitchens,* 702 F.2d 885, 888 (11th Cir. 1983)).

■ The "overriding consideration," however, is whether the debtor possessed an "intent to abuse the judicial process and the purposes of the reorganization process." *In re Lezdey,* 332 B.R. 217, 222 (Bankr.M.D.Fla.2005) (Citations omitted). "The real test which still remains is the presence of the honest intention of the debtor, the actual need, and the ability to effectuate the aim of the reorganization." *In re Serfass,* 325 B.R. 901, 906 (Bankr. M.D.Fla.2005) (quoting *In re Julius Roehrs,* 115 F.2d 723 (3d Cir.1940)).

■ In this case, the Debtor's lack of good faith is evidenced by the following factors:

### A. The Debtor is not employed or engaged in any business, and asserts that he has no "income."

■ An individual is not absolutely barred from filing a Chapter 11 petition solely because he is not engaged in any business. *In re Serfass,* 325 B.R. at 906 (citing *Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)). An individual debtor's unemployment is a factor that the Court may consider, however, in determining whether he lacked good faith in seeking Chapter 11 relief. *In re*

*Serfass,* 325 B.R. at 906. A Chapter 11 case may be dismissed, for example, where a debtor had "virtually no earnings" for several years before the petition was filed. *In re Lezdey,* 332 B.R. at 224.

The Debtor in this case was not employed or engaged in any business at the time that he filed his Chapter 11 Petition, and he testified that he has not earned any "regular income" since 2008. (Transcript, p. 32). His Statement of Financial Affairs shows that he had no income from employment or operation of a business in 2007, 2008, or 2009 before his petition was filed, and that he had only $4,841.00 and $8,458.00 in income other than from employment during the two years immediately preceding the commencement of this case.

Although he is the sole shareholder of an entity known as Integrated Global Solutions, Inc., the company has no assets and no employees, and has not earned any revenue for approximately two years. (Transcript, pp. 33–34). On his bankruptcy schedules, he listed his interest in the company as having a value of $0.00.

Additionally, the Debtor has affirmatively declined to characterize his Trust distributions as "income." According to an Addendum to Schedule I filed with his schedules, the Debtor asserts that:

Debtor's sole source of funds consists of distributions from the Frank L. Schultz Irrevocable Trust established February 3, 1993. As Debtor's beneficial interest in the Trust is an asset previously owned by him, *distributions from the trust do not constitute "income" for purposes of 11 U.S.C. § 521(a)(1). In re Wayman,* 351 B.R. 808, 811 (Bankr.E.D.Tex.2006). *The expected amount of distributions is provided for informational purposes even*

*though it is not "income" for Bankruptcy Code purposes.*

(Doc. 1, Addendum to Schedule I) (Emphasis supplied). Similarly, the Debtor represented in his Disclosure Statement that "[f]rom the time the bankruptcy case was commenced through the filing of this Disclosure Statement, Mr. Schultz was unemployed and had no income." (Doc. 43, p. 7).

It is not necessary for the Court to determine whether the Debtor's characterization of the Trust distributions is accurate. It is clear from the testimony and schedules that the Debtor generates no earnings from any employment or business enterprise, and that he has declined to characterize the Trust distributions as "income" in his bankruptcy case. (Under 11 U.S.C. § 109(e), of course, only "an individual with regular income" may be a debtor under Chapter 13 of the Bankruptcy Code.).

Additionally, the Debtor has proposed only a qualified commitment of the Trust distributions for payment of his creditors. In his Disclosure Statement, the Debtor represented that the payment schedule proposed in his Plan "depends on" his receipt of distributions from the Trust in an amount "sufficient to pay the Debtor's living expenses" and the payments to creditors specified in the Plan. (Doc. 43, p. 9).

The Court finds that the absence of any significant earnings or business operations, and the Debtor's assertion that he does not have any "income" within the meaning of the Bankruptcy Code, are factors evidencing his lack of good faith in filing the bankruptcy petition.

**B. The Debtor has not submitted a budget showing an intention to effectuate a repayment plan.**

On his Schedule I filed with the Chapter 11 petition, the Debtor stated that his dis-tributions from the Irrevocable Trust were $4,500.00 per month. (Doc. 1, Schedule I). In the Disclosure Statement subsequently filed by the Debtor, he stated that he will receive the sum of $4,000.00 per month from the Testamentary Trust established by his father, commencing in May of 2010. (Doc. 43, p. 9, Transcript, pp. 42–43).

On his Schedule of Expenses filed with the petition, the Debtor stated that his current expenditures totaled the sum of $6,617.00 per month. The expenditures included $1,000.00 per month for food, $200.00 per month for clothing, $500.00 per month for medical and dental expenses and a separate $450.00 per month for health insurance, $340.00 per month for recreation, $525.00 per month for personal care and grooming, and $100.00 per month for "vet bills," even though no animals were listed on his schedules. (Doc. 1, Schedule J). The expenses scheduled by the Debtor are surprisingly large and disproportionate to the Debtor's receipts from the Trust. See *In re Letterese*, 397 B.R. at 515(In finding that the debtor acted in bad faith, the Court noted that the "expenses listed are enormous and appear to be completely disconnected from the Debtor's income.").

The monthly expenses scheduled by the Debtor exceed his monthly Trust distributions by at least $2,117.00. There is no explanation as to how the prepetition budget deficit was funded each month. Further, there is no explanation of any specific postpetition measures that the Debtor has taken to reduce his monthly living expenses. The Debtor has not furnished a proposed budget during the Chapter 11 case that would enable the Court to evaluate the Debtor's repayment efforts.

In his Disclosure Statement, instead of submitting a projection of future income and expenses for the life of his Plan, the Debtor stated only that he "does not, as a matter of course, make long-range exter-

nal forecasts or projections of anticipated financial position." (Doc. 43, p. 9). He then referred to his Monthly Operating Reports as reflecting his "cash receipts and expenses as of the Petition Date as accurately as possible." (Doc. 43, p. 9). The Monthly Reports for October of 2009 through January of 2010, however, do not establish an historical basis for finding the Debtor's ability to effectuate a Plan. The Debtor has not submitted a budget showing that he has an intention or the ability to effectuate a repayment plan.

### C. The case was filed to avoid the collection efforts of a single creditor.

Justice is a creditor holding a Judgment against the Debtor in the amount of $250,000.00. Justice had filed a Judgment Lien Certificate with the Florida Secretary of State, and had also repossessed the Debtor's vehicle and garnished his bank account within the months preceding the filing of the Chapter 11 petition.

Other than Justice, the only creditors scheduled by the Debtor are his landlord, the Trust, and general unsecured creditors holding claims totaling $36,231.43. The debt to the landlord is scheduled as being fully secured by a security deposit. The debt scheduled for the Trust is based on a loan obtained by the Debtor to pay the legal fees for his Chapter 11 case.

Additionally, according to the Debtor, the liabilities scheduled as unsecured claims were incurred approximately eight years before the bankruptcy petition was filed, and none of the unsecured creditors were suing the Debtor or attempting to seize his assets as of the petition date. (Transcript, pp. 15–16, 19–21). See *In re Lezdey,* 332 B.R. at 223 (A judgment creditor's motion to dismiss was granted where the judgment creditor held the majority of the outstanding debt, and where the debtor's other debts were stale and were not the subject of any creditor pressure.).

Further, in the Debtor's Disclosure Statement, he stated that the "Chapter 11 filing was precipitated by the execution and seizure of his bank account and motor vehicle by a creditor," and that the petition was filed after negotiations with the creditor failed. (Doc. 43, p. 7). The Disclosure Statement does not indicate that the Chapter 11 petition was filed in response to any other financial need.

Under the circumstances, the Court finds that the petition was filed to avoid the collection efforts of a single creditor in what is essentially a two-party dispute. *In re Lezdey,* 332 B.R. at 223.

### D. The Debtor has made postpetition payments on a prepetition loan.

According to the Debtor, he borrowed the sum of $22,800.00 from the Irrevocable Trust to pay the legal fees incurred in connection with his bankruptcy case. (Transcript, p. 17). Although the debt is listed as a secured obligation on his bankruptcy schedules, no documents supporting the secured status of the claim appear in the record.

Nevertheless, the Debtor testified that the Trust has withheld the sum of $500.00 per month, postpetition, as repayment of the loan. (Transcript, pp. 18–19). It is unclear whether the Trust has received preferential treatment of its prepetition loan. See *In re 239 Worth Avenue Corp.,* 236 B.R. 492, 495 (Bankr.S.D.Fla.1999)(Dismissal of a case for lack of good faith may be warranted where the debtor has made unauthorized postpetition payments.).

### V. Conversion is not in the best interest of creditors.

The Debtor seeks to convert the case to a case under Chapter 13, asserting that such conversion is in the best interest of creditors.

It appears that the Debtor proposes to pay essentially the same amount to credi-

tors pursuant to a Chapter 13 plan that he proposes to pay pursuant to the Chapter 11 plan. Both Chapter 11 and Chapter 13 require an individual debtor to dedicate all projected disposable income to the repayment plan if an unsecured creditor objects. § 1129(a)(15) and § 1325(b)(1). The debt to Justice may be a debt to a former spouse incurred in the course of a divorce within the meaning of § 523(a)(15) of the Bankruptcy Code. A discharge under Chapter 11 does not discharge an individual debtor from such a debt. § 1141(d)(2). A discharge under Chapter 13, however, does discharge such a debt. § 1328(a). Accordingly, a conversion to Chapter 13 may have little effect on unsecured creditors, but may discharge the major portion of the debt to Justice. While this result might be of substantial benefit to the Debtor, it does not appear to be in the best interest of Justice. Viewing the creditor body as a whole, a conversion to Chapter 13 does not appear to be in the best interest of creditors.

## VI. Conclusion

For the reasons discussed above, the Court finds that the Debtor did not file this bankruptcy case in good faith. The circumstances of the case demonstrate that the Debtor did not seek Chapter 11 relief with the intent or ability to reorganize his finances under the bankruptcy laws. Justice has established "cause" for dismissal, and the Chapter 11 case should be dismissed for "cause" pursuant to § 1112(b)(1) of the Bankruptcy Code.

■ The Court also finds that the Debtor's Motion to convert the case to a case under Chapter 13 of the Bankruptcy Code should be denied, because the finding of bad faith is "tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13." *Marrama*, 549 U.S. at 374, 127 S.Ct. 1105. Pursuant to § 1112(f) of the Bankruptcy Code, therefore, the case may not be converted to a case under Chapter 13, since the Debtor may not "be a debtor under such chapter." Additionally, it does not appear that converting the case to a case under Chapter 13 is in the best interest of the creditors.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Dismiss Case filed by Dr. Cynthia Justice is granted, and the above-captioned Chapter 11 case is dismissed.

The Motion to Convert Case to Chapter 13 filed by the Debtor, Stephen L. Schultz, is denied.