**IN RE : John Joseph Louis JOHNSON, III, Debtor.**

**Case No. 14–57104**

United States Bankruptcy Court, S.D. Ohio, Eastern Division, **at Columbus.**

Signed July 24, 2015

Daniel A. DeMarco, Cleveland, OH, Marc J. Kessler, Hahn Loeser & Parks LLP, Columbus, OH, for Debtor.

## *OPINION AND ORDER GRANTING MOTION FOR ENTRY OF PROTECTIVE ORDER BARRING DEPOSITIONS OF COUNSEL (DOC. 309)*

John E. Hoffman, Jr., United States Bankruptcy Judge

The Chapter 11 debtor and debtor in possession, John Joseph Louis Johnson, III (the "Debtor"), and his attorneys Daniel A. DeMarco, Marc J. Kessler and Rocco I. Debitetto (collectively, the "Attorneys"), have filed a motion for entry of a protective order barring the depositions of the Attorneys (the "Motion") (Doc. 309). For the reasons stated below, the Court grants the Motion.

On October 7, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and, on March 5, 2015, he filed a motion under § 1112(a) of the Bankruptcy Code seeking to convert his Chapter 11 case to one under Chapter 7 (the "Conversion Motion") (Doc. 167). Ob-

jections to the Conversion Motion were filed by the RFF Family Partnership, LP ("RFF") (Doc. 184); Capital Holding Enterprises, LLC ("CHE") (Doc. 185); Capital Financial Holdings, LLC ("CFH") (Docs. 186 & 188); Rod Blum ("Blum") (Doc. 187); and Cobalt Sports Capital, LLC ("CSC") (Doc. 192). Pro Player Funding, LLC ("PPF") filed a joinder in certain of those objections (Doc. 191), and EOT Advisors, LLC ("EOT") filed a notice supporting certain aspects of CFH's objection (Doc. 193). The Debtor filed a reply to the objections (the "Reply") (Doc. 197). The hearing on the Conversion Motion has been scheduled to commence on September 2, 2015.

On July 1, 2015, RFF, on behalf of itself as well as CFH, CHE, Capstar Bank, CSC, EOT, PPF and Blum (collectively, the "Creditors"), filed and served a notice of deposition on the Attorneys (the "Deposition Notice") (Doc. 301). The Deposition Notice stated that the Creditors would depose the Attorneys about certain statements the Debtor made in the Conversion Motion and the Reply.

On July 10, 2015, the Debtor and the Attorneys (collectively, the "Movants") filed the Motion pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, made applicable by Rule 7026 of the Federal Rules of Bankruptcy Procedure. The Movants rely on *Nationwide Mutual Insurance Co. v. Home Insurance Co.*, 278 F.3d 621 (6th Cir.2002), in which the Sixth Circuit held that "[d]iscovery from an opposing counsel is limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information ...; (2) the information sought is relevant *and nonprivileged* ; and (3) the information is crucial to the preparation of the case." *Id.* at 628 (emphasis added) (internal quotation marks omitted). Among other things, the

Movants contend that all of the information about which the Creditors would seek to depose them is obtainable from other sources (if they do not already have it) or is protected by the attorney-client privilege or work-product doctrine. Mot. at 2.

In their objection to the Motion filed on July 17, 2015 ("Objection") (Doc. 316), the Creditors do not state that they seek to depose the Attorneys on matters that are outside the scope of the protections of the attorney-client privilege or the work-product doctrine. Rather, they contend that those protections are waived "when a client asserts reliance on an attorney's advice as an element of a claim or defense," arguing that this "is precisely what the Debtor [did] here" when he represented in the Conversion Motion that " 'after consultation with counsel, [the Debtor] determined that it is in the interests of the estate to convert this chapter 11 case to a case under chapter 7." Objection at 1–2. According to the Creditors, "[t]he Debtor has thus expressly put his counsel's advice at issue through his reliance on that advice to establish a key element of the relief sought through the Conversion Motion, i.e., whether it is in the best·interest of the estate to convert this case." *Id.* at 2.

■■■■ For purposes of its ruling on the Motion, the Court will assume the validity of the premise underlying the Objection—that a party waives the attorney-client privilege if he attempts to prove his claim or defense by disclosing and relying on privileged communications. *See DRFP, LLC v. Republica Bolivariana de Venezuela,* No. 2:04–cv–793, 2015 WL 2452970, at *6 (S.D.Ohio 2015) ("[T]he advice of counsel is placed in issue where the client asserts a claim or defense, *and attempts to prove that claim or defense by disclosing or describing an attorney client communication.*") (internal quotation marks omitted). But that is not what the Debtor did when he filed the Conversion Motion. The Court so holds for two reasons. First, the statement that "after consultation with counsel, [the Debtor] determined that it is in the interests of the estate to convert this chapter 11 case to a case under chapter 7" reveals only that the Debtor consulted with counsel (which happens in every Chapter 11 case) and that the Debtor then determined that it is in the interest of his estate to convert to Chapter 7. That representation in no way discloses or describes what he communicated to the Attorneys or what they communicated to him. Second, as the ·Movants correctly pointed out in their reply in support of the Motion (Doc. 323) filed on July 22, 2015, the only elements on which the Debtor has the burden of proof under § 1112(a) are that he is a debtor in possession, that his case was not originally commenced as an involuntary case under Chapter 11 and that the case was not converted to Chapter 11 other than on his request.[1] The statement from the Conversion Motion concerning which the Creditors seek to depose the Attorneys—"after consultation with counsel, [the Debtor] determined that it is in the interests of the estate to convert this chapter 11 case to a case under chapter 7"—goes to none of those elements. "[N]o waiver occurs if the party from whom privileged communications are sought has not used attorney-client communications to prove the claim at issue." *DRFP, LLC,* 2015 WL 2452970, at *6.

---

1. Section 1112(a) states: "The debtor may convert a case under this chapter to a case under chapter 7 of this title unless—(1) the debtor is not a debtor in possession; (2) the case originally was commenced as an involuntary case under this chapter; or (3) the case was converted to a case under this chapter other than on the debtor's request." 11 U.S.C. § 1112(a).

In addition to relying on the Conversion Motion, the Creditors argue that the Debtor placed matters about which they seek to depose the Attorneys at issue when he filed the Reply:

> [T]he Debtor's investigation into claims (presumably including claims against the Debtor's parents) is alleged to have been conducted independently and thoroughly "by and through counsel." Reply at p. 9. And, it is asserted that as concerns the good faith of the Debtor's plan proposal, counsel was reluctant to mire the estate in costly litigation, thereby causing delay and perhaps preventing legitimate creditors from recovering anything meaningful in the case.

Objection at 7.

It is, of course, axiomatic that it is the Debtor as client—and not the Attorneys as his counsel—who had the authority to make the decision to seek conversion of this Chapter 11 case to Chapter 7. *See* Rule 1.2 of the Ohio Rules of Professional Conduct ("ORPC") ("[A] lawyer shall abide by a client's decisions concerning the objectives of representation[.]"); ORPC Rule 1.2 cmt. 1 ("[Rule 1.2] confers upon the client the ultimate authority to determine the purposes to be served by legal representation...."). There is no question, however, that the Attorneys had the duty to consult with the Debtor before he did so. *See* ORPC Rule 1.2 ("[A] lawyer shall ... shall consult with the client as to the means by which [the objectives of the representation] are to be pursued."); ORPC Rule 1.2 cmt. 1 ("With respect to the means by which the client's objectives are to be pursued, the lawyer shall consult with the client...."). So the representation the Attorneys made in the Reply that "*counsel* was reluctant to mire the estate in costly litigation" was ill-advised and unfortunate. In fact, this discovery dispute likely arose in large part due to this and other similarly inartful and unnecessary statements in the Reply. But the Court cannot conclude that the vitally important protections afforded by the attorney-client privilege[2] should be cast aside based upon such a slender reed—that is, the awkward and inartful phrasing used by the Attorneys in drafting the Conversion Motion and Reply. As explained below, the Court finds that the statements in the Conversion Motion and the Reply cited by the Creditors have not resulted in the Debtor's waiver of the attorney-client privilege.

■ By way of background, the Court notes that a Chapter 11 case "may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter[.]" 11 U.S.C. § 1112(f), and the Creditors have argued that the Debtor may not be a debtor under Chapter 7 because he has exhibited a lack of good faith since the Petition Date. *See, e.g.,* RFF Objection at 9 (alleging that the Debtor has not negotiated with the Creditors in good faith);[3] CHE Objection at 1 (questioning the Debtor's good faith "[g]iven the relative inactivity of the Debtor in

---

**2.** *See In re Lott,* 424 F.3d 446, 450 (6th Cir. 2005) ("It is not hyperbole to suggest that the attorney-client privilege is a necessary foundation for the adversarial system of justice.").

**3.** RFF also improperly revealed details of the offer the Debtor allegedly made during settlement negotiations. As it has done previously, the Court notes that such information is protected by the settlement privilege recognized by the Sixth Circuit. *See Goodyear Tire &* *Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 981 (6th Cir.2003) ("The public policy favoring secret negotiations, combined with the inherent questionability of the truthfulness of any statements made therein, leads us to conclude that a settlement privilege should exist, and that the district court did not abuse its discretion in refusing to allow discovery."). *See also* Fed.R.Evid. 408 (Compromise Offers and Negotiations).

this case" and contending that the Debtor has "made almost no effort to resolve his disputes with his creditors" and that "there is nothing in the record which indicates that he has taken any action to assert any claims against [his parents], which claims may have been beneficial to the bankruptcy estate"); CFH Objection at 2 (alleging that "Debtor has made no meaningful effort during the six months that this chapter 11 case has been pending to negotiate in good faith with his creditors" and that "the Debtor has also made literally no apparent effort to investigate and prosecute claims and causes of action against the 'advisors' that he claims fraudulently borrowed millions of dollars from the creditors in this case without his knowledge or consent"); CFH Memorandum of Law at 5–8 (alleging that the Debtor's lack of good faith is evidenced by the manner in which he scheduled debts on his schedules of assets and liabilities, his stating on his voluntary petition that his debts are primarily business debts, his spending habits after the Petition Date and his failure to make meaningful efforts to negotiate with his creditors, including by filing the Conversion Motion before giving CFH a chance to respond to his offer).

The Creditors also argue that the Debtor's alleged lack of good faith would constitute cause for dismissal under § 707(a) if his case were converted to Chapter 7. *See, e.g.,* RFF Objection at 13. Pointing out that in *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007), "the United States Supreme Court imposed a bad-faith conduct exception to a Debtor's otherwise absolute right to convert a case from Chapter 7 to Chapter 13," they further contend that the rationale of *Marrama* applies equally to attempted conversions from Chapter 11 to other chapters of the Bankruptcy Code, including Chapter 7. *See, e.g.,* CHE Objection at 2. The Court assumes this to be the case.[4] The Creditors, though, have the burden of proof on the issue of the Debtor's lack of good faith in the context of an objection to conversion. *See Condon v. Smith (In re Condon),* 358 B.R. 317, 326 (6th Cir. BAP 2007).[5] In other words, good faith is not an element of the Debtor's request to convert and, as discussed above, he did not put it at issue when he filed the Conversion Motion. Instead, lack of good faith is the basis of the Creditors' objections to

**4.** *See In re Schultz,* 436 B.R. 170, 179 (Bankr. M.D.Fla.2010) ("The Court also finds that the Debtor's Motion to convert the case [from Chapter 11] to a case under Chapter 13 of the Bankruptcy Code should be denied, because the finding of bad faith is 'tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13.' *Marrama,* 549 U.S. at 374, 127 S.Ct. 1105. Pursuant to § 1112(f) of the Bankruptcy Code, therefore, the case may not be converted to a case under Chapter 13, since the Debtor may not 'be a debtor under such chapter.' "); *In re Modern Metal Prods. Co.,* 422 B.R. 118, 122 (Bankr. N.D.Ill.2009) ("[T]he debtor seeks to convert from Chapter 11 to Chapter 7.... If it is clear that the granting of the motion to convert would serve no other purpose than to waste time and resources, or that the Debtor's only purpose in filing the motion was to delay, then under the reasoning of *Marrama,* the Court could certainly deny the Debtor's motion.").

**5.** Although *Condon* was decided before *Marrama,* the vast majority of courts deciding the issue since *Marrama* likewise have placed the burden of proving lack of good faith on the party objecting to conversion. *See, e.g., In re Gedda,* Case No. 6:13–bk–02238–KSJ, 2015 WL 1396605, at *3 (Bankr.M.D.Fla. Mar. 24, 2015); *In re Basil Street Partners, LLC,* 477 B.R. 856, 861 (Bankr.M.D.Fla.2012) (Judge Hopkins); *In re Yarborough,* 2012 WL 4434053, at *2 (Bankr.E.D.Tenn. Sept. 24, 2012); *In re FMO Assocs. II, LLC,* 402 B.R. 546, 551 (Bankr.E.D.N.Y.2009); *In re Goines,* 397 B.R. 26, 32 (Bankr.M.D.N.C.2007); *In re George Love Farming, LC,* 366 B.R. 170, 179 (Bankr.Utah 2007).

conversion. Although the Debtor conceivably could waive the protections of the attorney-client privilege in the course of defending against the allegations of lack of good faith by disclosing privileged communications with counsel, he has not yet done so. Like the statement in the Conversion Motion regarding consultation with counsel, the statement that the "Debtor, by and through counsel, independently conducted a thorough investigation of the claims made, identified those claims that can be asserted on behalf of the estate and evaluated the likelihood of success on the merits of both," Reply at 9, does not reveal attorney-client communications. The representation that "Debtor's counsel was reluctant to mire the estate in costly litigation, thereby causing delay and perhaps preventing legitimate unsecured creditors from recovering anything meaningful in the case," Reply at 4, was ill-considered because, as stated above, it is the Debtor who is ultimately charged with making such decisions, not counsel. Again, however, this statement did not disclose or describe a communication between the Debtor and his counsel. Nor did any of the other statements made in the Reply.

Finally, it should be noted that the Debtor faces a difficult decision: Should he waive the protections afforded by the attorney-client privilege, the work-product doctrine, the settlement privilege and Rule 408 of the Federal Rules of Evidence? For if the Creditors adduce evidence during the hearing on the Conversion Motion supporting the allegations they have made in their objections, the Court finds it difficult to conceive how the Debtor could rebut that evidence without delving into matters shielded by the attorney-client privilege, the work-product doctrine and the settlement privilege. That said, for the reasons stated above, the Court concludes that the Debtor has not waived the protections of the attorney-client privilege

or the work-product doctrine, and the Motion accordingly is **GRANTED.**

**IT IS SO ORDERED.**