**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| In the Matter of: CESAR IVAN FLORES; ANA MARIA FLORES, *Debtors*. | No. 11-55452 <br><br> D.C. No 6:10-29956-MJ |
| ROD DANIELSON, *Trustee-Appellant*, <br><br> v. <br><br> CESAR IVAN FLORES; ANA MARIA FLORES, *Debtors-Appellees*. | OPINION |

Appeal from the United States Bankruptcy Court
for the Central District of California
Meredith A. Jury, Bankruptcy Judge, Presiding

Argued and Submitted En Banc
March 19, 2013—San Francisco, California

Filed August 29, 2013

Before: Alex Kozinski, Chief Judge, and Harry Pregerson,
Diarmuid F. O'Scannlain, Sidney R. Thomas, Barry G.
Silverman, Susan P. Graber, Kim McLane Wardlaw,
Richard A. Paez, Mary H. Murguia, Morgan Christen, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge Graber;
Dissent by Judge Pregerson

## SUMMARY[*]

### Bankruptcy

Affirming the judgment of the bankruptcy court, the en banc court held that when a Chapter 13 debtor has no "projected disposable income," 11 U.S.C. § 1325(b)(1)(B) permits plan confirmation only if the length of the proposed plan is at least equal to the applicable commitment period under § 1325(b)(4).

The en banc court overruled the holding of *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008), that § 1325(b)(1)(B) does not impose a minimum duration for a Chapter 13 plan if the debtor has no projected income. Joining the Sixth, Eighth, and Eleventh Circuits, and reaffirming another aspect of *Kagenveama*, the en banc court held that under § 1325(b)(1)(B), the applicable commitment period acts as a temporal, as distinct from a monetary, requirement that defines a plan's minimum duration. Agreeing with the Sixth and Eleventh Circuits, the en banc court held that this temporal requirement applies regardless of the debtor's protected disposable income.

Dissenting, Judge Pregerson, joined by Chief Judge Kozinski, wrote that the majority's interpretation of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

§ 1325(b)(1)(B) promoted goals that were at odds with Congress's purpose when it enacted Chapter 13 to provide debtors with a fresh start. In addition, the majority read language into Chapter 13 bankruptcy law that was not present in the plain text of § 1325(b)(1)(B). Judge Pregerson interpreted § 1325 to mean that the applicable commitment period in which debtors are required to distribute projected disposable income to unsecured creditors applies only to debtor with projected disposable income.

## COUNSEL

Elizabeth A. Schneider, Office of Rod Danielson, Chapter 13 Trustee, Riverside, California, for Trustee-Appellant.

Robert J. Pfister (argued), Klee, Tuchin, Bogdanoff & Stern LLP, Los Angeles, California, and Nancy B. Clark, Borowitz & Clark, LLP, West Covina, California, for Debtors-Appellees.

William Andrew McNeal (argued) and Gilbert B. Weisman, Becket & Lee LLP, Malvern, Pennsylvania, for Amici Curiae American Express Travel Related Services Co., Inc., American Express Bank, FSB, and American Express Centurion Bank.

Tara Twomey, National Consumer Bankruptcy Rights Center, San Jose, California, for Amicus Curiae National Association of Consumer Bankruptcy Attorneys.

**OPINION**

GRABER, Circuit Judge:

In *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868, 875 (9th Cir. 2008), we held that 11 U.S.C. § 1325(b)(1)(B) does not impose a minimum duration for a Chapter 13 bankruptcy plan if the debtor has no "projected disposable income," as defined in the statute. Today, sitting en banc, we overrule that aspect of *Kagenveama* and hold that the statute permits confirmation only if the length of the proposed plan is at least equal to the applicable commitment period under § 1325(b)(4). Accordingly, we affirm the judgment of the bankruptcy court.

## I. Background

Debtors Cesar and Ana Flores filed a petition for relief under Chapter 13 of the Bankruptcy Code. They have unsecured debts. They proposed a plan of reorganization under which they would pay $122 per month (1%) of allowed, unsecured, nonpriority claims for three years. Chapter 13 Trustee Rod Danielson objected to the plan, arguing, as now relevant, that § 1325(b) requires a minimum duration of five years for persons in Debtors' circumstances.[1]

The bankruptcy court sustained the Trustee's objection, holding that Debtors were not entitled to a shorter plan duration because the Supreme Court's decision in *Hamilton v. Lanning*, 130 S. Ct. 2464 (2010), is clearly irreconcilable

---

[1] The Trustee has never questioned Debtors' good faith in proposing the plan. *See* 11 U.S.C. § 1325(a)(3) (setting forth requirement of the debtors' good faith).

with *Kagenveama*.[2] The bankruptcy court confirmed a plan of five years' duration, which provided for monthly payments of $148 to unsecured creditors.[3]

Debtors timely appealed to the Bankruptcy Appellate Panel. The bankruptcy court then certified the plan-duration issue for direct appeal to this court pursuant to 28 U.S.C. § 158(d)(2). A divided panel of this court reversed, reasoning that *Lanning* is not clearly irreconcilable with *Kagenveama* and that, under *Kagenveama*, § 1325(b) allows a shorter plan duration for Debtors. *Danielson v. Flores (In re Flores)*, 692 F.3d 1021, 1038 (9th Cir. 2012). We then voted to rehear the case en banc. *Danielson v. Flores (In re Flores)*, 704 F.3d 1067 (9th Cir. 2012).[4]

## II. Analysis

Chapter 13 is a mechanism available to "individual[s] with regular income" whose debts are within statutory limits. 11 U.S.C. §§ 101(30), 109(e). Unlike Chapter 7, which requires debtors to liquidate nonexempt assets to pay creditors, Chapter 13 permits debtors to keep those assets if

---

[2] *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that a three-judge panel is not bound by prior circuit precedent if an intervening decision of a higher authority "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable").

[3] Debtors do not dispute the increase from $122 to $148 per month.

[4] We review de novo issues of statutory construction, including a bankruptcy court's interpretation of the Bankruptcy Code. *Samson v. W. Capital Partners, LLC (In re Blixseth)*, 684 F.3d 865, 869 (9th Cir. 2012) (per curiam).

they "agree to a court-approved plan under which they pay creditors out of their future income." *Lanning*, 130 S. Ct. at 2468–69 (citing 11 U.S.C. §§ 1306(b), 1321, 1322(a)(1), 1328(a)).   A bankruptcy trustee oversees the filing and execution of the plan.   11 U.S.C. § 1322(a)(1); *see also* 28 U.S.C. § 586(a)(3).

Section 1325 of the Bankruptcy Code sets forth the circumstances in which the bankruptcy court "shall" confirm a debtor's proposed repayment plan and those in which it "may not" do so.  Under subsection 1325(b)(1), if the trustee or an unsecured creditor objects to a debtor's proposed plan, the court may not approve the plan unless at least one of two conditions is met.  As relevant here, the second of those conditions is that "the plan provides that all of the debtor's projected disposable income to be received in *the applicable commitment period* beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."  11 U.S.C. § 1325(b)(1)(B) (emphasis added).   The statute further provides that the "applicable commitment period" of a plan "shall be" either

> (A) subject to subparagraph (B), . . .
>
>> (i) 3 years; or
>>
>> (ii) not less than 5 years, if the [debtor's] current monthly income . . . , when multiplied by 12, is not less than [the median annual family income in the applicable state]; and

(B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

*Id.* § 1325(b)(4). The debtor's "current monthly income" and "disposable income" are calculated according to statutorily defined formulae. *See id.* § 101(10A) (defining "current monthly income"); *id.* § 1325(b)(2) (defining "disposable income"); *see also Lanning*, 130 S. Ct. at 2469, 2471–74, 2478 (holding that courts must calculate "*projected* disposable income," which is not statutorily defined, using a "forward-looking" approach (emphasis added)).

It is undisputed that Debtors' current monthly income is above-median and that subsection 1325(b)(4)(B)'s exception to the five-year applicable commitment period set forth in § 1325(b)(4)(A)(ii) does not apply. Debtors nonetheless contend that their proposed three-year plan was permissible because § 1325(b)(1)(B) does not set forth a minimum plan duration for debtors who, like them, have no projected disposable income.

Courts have interpreted § 1325(b)(1)(B)'s condition for plan confirmation in three distinct ways. *See Baud v. Carroll*, 634 F.3d 327, 336–38 (6th Cir. 2011) (describing split of decisions and collecting cases), *cert. denied*, 132 S. Ct. 997 (2012). First, a minority of bankruptcy courts view the "applicable commitment period" solely as a monetary "multiplier"; under that "monetary" approach, the number of months in the applicable commitment period is multiplied by the debtor's projected disposable monthly income to determine the total payments that a debtor must make, but the

period has no temporal significance. *Id.* at 336–38 & n.7. Second, other bankruptcy courts, as well as this court in *Kagenveama*, have held that, although the statute does set forth a temporal requirement, that temporal requirement does not apply to debtors whose projected disposable income is less than or equal to $0. *Baud*, 634 F.3d at 337. Third and finally, a majority of courts have held that a plan cannot be confirmed unless its length is at least as long as the applicable commitment period, without regard to "whether the debtor has positive, zero[,] or negative projected disposable income." *Id.* at 336–37. We therefore must consider two issues: (1) whether, under § 1325(b)(1)(B), the applicable commitment period acts as a *temporal* requirement that defines a plan's minimum duration; and (2) if it does, whether that requirement applies to debtors who have no projected disposable income.

With respect to the first issue, we hold that the statute defines a *temporal*, as distinct from a *monetary*, requirement for confirmation under § 1325(b)(1)(B). Most importantly, the statute defines the applicable commitment period as having a duration: "3 years," "not less than 5 years," or "less than 3 or 5 years," depending on the debtor's current monthly income and the plan's provisions for payments to unsecured creditors. 11 U.S.C. § 1325(b)(4). Furthermore, the requirement of § 1325(b)(1)(B) that the plan provide for payment of the debtor's disposable income "to be received in the applicable commitment period" suggests an ongoing series of payments for the future duration of that period. A plan cannot provide for the payment of income to be received

during a defined period unless it remains in effect during that period.[5]

Three of our sister courts—the Sixth, Eighth, and Eleventh Circuits—are among the courts that have rejected the view that the applicable commitment period is merely a monetary multiplier for determining the amount that the debtor must pay to unsecured creditors. *Baud*, 634 F.3d at 344; *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873, 880 (11th Cir. 2010); *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652, 660 (8th Cir. 2008). We join those courts and hold that the applicable commitment period determines the minimum duration that a plan must have to be confirmable under § 1325(b)(1)(B). In doing so, we reaffirm one aspect of the decision in *Kagenveama*, in which the panel reasoned that, in general, the applicable commitment period imposes a temporal requirement because the "plain meaning of the word 'period' indicates a period of time." 541 F.3d at 876.

With respect to the second issue, we must decide whether a court may confirm a plan that is shorter than the applicable commitment period defined by § 1325(b)(4) if the debtor has

---

[5] Our interpretation of § 1325(b)(1)(B) does not render that provision redundant with § 1322(d), which sets forth the *maximum* periods of time for a Chapter 13 bankruptcy, because § 1325(b)(1)(B) concerns the plan's *minimum* duration. Although both the maximum and the minimum will be five years for many debtors whose income, like that of the debtors in this case, is above-median, 11 U.S.C. §§ 1322(d)(1), 1325(b)(4)(A)(ii), a range of permissible plan durations remain possible if a proposed plan to repay all allowed unsecured creditors' claims in full warrants a shorter applicable commitment period under § 1325(b)(4)(B). Furthermore, § 1325(b) is triggered only if the trustee or a creditor objects, whereas § 1322(d) applies in all cases, a distinction that suggests that Congress intended the two sections to serve different functions.

no projected disposable income. In light of the statute's text, purpose, and legislative history, we now hold that the temporal requirement of § 1325(b) applies regardless of the debtor's projected disposable income.

In *Kagenveama*, we held that the § 1325(b)(1)(B) temporal requirement contains an implicit exception because the "'applicable commitment period' is exclusively linked to § 1325(b)(1)(B) and the 'projected disposable income' calculation." 541 F.3d at 876. Noting that "[n]othing in the Bankruptcy Code states that the 'applicable commitment period' applies to all Chapter 13 plans," the panel concluded that "[w]hen there is no 'projected disposable income,' there is no 'applicable commitment period.'" *Id.* at 876, 877. The Sixth and Eleventh Circuits have disagreed and have held that § 1325(b) contains no such exception for debtors with no projected disposable income. *See Baud*, 634 F.3d at 351 ("[T]he temporal requirement of the applicable commitment period applies to debtors facing a confirmation objection even if they have zero or negative projected disposable income."); *Tennyson*, 611 F.3d at 880 ("[T]he 'applicable commitment period' is a temporal term that prescribes the minimum [plan] duration . . . . The only exception to this minimum period, if unsecured claims are fully repaid, is provided in § 1325(b)(4)(B).").[6] We now agree with the other circuits' interpretation.

Our analysis begins with the statute's text. *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir.), *cert. denied*,

---

[6] In *Frederickson*, the Eighth Circuit expressly declined to decide whether such an exception to § 1325(b)'s temporal requirement exists when a debtor's projected disposable income is either zero or negative. 545 F.3d at 660 n.6.

133 S. Ct. 256 (2012). Although § 1325(b) is somewhat ambiguous, *see Baud*, 634 F.3d at 351 (noting that "the plain-language arguments" for and against an exception to § 1325(b)'s temporal requirement "are nearly in equipoise"), that subsection is best read to impose its temporal requirement regardless of the debtor's projected disposable income. Most significantly, the statute makes neither § 1325(b)(4)'s calculation of the applicable commitment period nor § 1325(b)(1)(B)'s requirement that a plan provide for payments over that period explicitly contingent on a particular level of projected disposable income. Thus, even though a debtor's payments to unsecured creditors will, at least initially, amount to $0 if the debtor has no projected disposable income, the statute requires the debtor to commit to the plan for the duration of the applicable commitment period.

Furthermore, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1244 (9th Cir. 2012) (internal quotation marks omitted). The structure of Chapter 13 confirms that § 1325(b)(1)(B) establishes a minimum plan duration even if the debtor has no projected disposable income. A debtor's applicable commitment period is not, as the panel reasoned in *Kagenveama*, "exclusively linked to § 1325(b)(1)(B) and the 'projected disposable income' calculation." 541 F.3d at 876. Rather, the applicable commitment period is expressly incorporated as a temporal limit for purposes of plan modification under § 1329.

Under § 1329(a), a bankruptcy court may modify a plan at any time after plan confirmation, so long as the modification occurs before the completion of payments under

the plan. But a modified plan "may not provide for payments over a period that expires after *the applicable commitment period* under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due." 11 U.S.C. § 1329(c) (emphasis added). Thus, the statute defines the temporal window within which modified payments under § 1329 may be made by reference to the applicable commitment period. Indeed, the quoted text would make no sense unless the applicable commitment period describes a length of time that can expire or be altered. With respect to plan modification, then, the applicable commitment period serves as a measure of plan duration that is wholly unrelated to the amount of the debtor's disposable income.

A minimum duration for Chapter 13 plans is crucial to an important purpose of § 1329's modification process: to ensure that unsecured creditors have a mechanism for seeking increased (that is, non-zero) payments if a debtor's financial circumstances improve unexpectedly. *See Fridley v. Forsythe (In re Fridley)*, 380 B.R. 538, 543 (B.A.P. 9th Cir. 2007) ("Subsequent increases in [a debtor's] actual income can be captured for creditors by way of a § 1329 plan modification . . . ."). The bankruptcy court may modify a plan to "increase . . . the amount of payments on claims of a particular class." 11 U.S.C. § 1329(a)(1). In other words, even if a debtor has no projected disposable income at the time of plan confirmation, and his or her statutorily required payments under § 1325(b)(1)(B) are therefore $0, unsecured creditors may request a later modification of the plan to increase the debtor's payments if the debtor acquires disposable income during the pendency of the applicable commitment period. Creditors' opportunity to seek increased payments that correspond to changed circumstances would be undermined by an interpretation of § 1325(b)(1)(B) that

relieves debtors from a minimum plan duration merely because they have no projected disposable income at the time of plan confirmation.[7]

Interpreting § 1325(b)(1)(B) to impose a minimum plan duration is also consistent with the prevailing interpretation in our circuit of §§ 1328(a) and 1329(a). Much as § 1329(a) permits modification until "completion of payments under [the] plan," § 1328(a) entitles the debtor to discharge "after completion by the debtor of all payments under the plan." In *Fridley*, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") considered when a plan is "completed" for purposes of § 1329(a) and § 1328(a). The debtors in that case had not paid all allowed unsecured claims in full, but sought discharge after prepaying the payments that they were required to make under their confirmed plan. *Fridley*, 380 B.R. at 540. The BAP ruled that the debtors were not entitled to discharge because "prepayment does not 'complete' [a] plan for purposes of §§ 1328(a) or 1329." *Id.* at 545. Rather, it held, "[t]he 'applicable commitment period' in § 1325(b) is a temporal requirement . . . [and] the statutory concept of 'completion' of payments includes the completion of the requisite period of time." *Id.* at 546. The BAP reached that conclusion even though that case, like this one, involved debtors who had no projected disposable income and for

---

[7] This conclusion is bolstered by the sections of the Code that allow creditors to monitor a debtor's financial situation during the bankruptcy. For instance, Chapter 13 debtors, upon request, must provide post-petition reports of the amount and sources of their income, *see* 11 U.S.C. § 521(f)–(g), and the "obvious purpose of this self-reporting obligation is to provide information needed by a [creditor] to decide whether to propose hostile § 1329 plan modifications," *Fridley*, 380 B.R. at 544. The purpose of these monitoring provisions would be undermined if each plan did not have a minimum duration.

whom § 1325(b)(1)(B) accordingly would permit monthly payments of $0 to unsecured creditors. *Id.* at 540.

Because the text of § 1325(b) is ambiguous, we also look to legislative history in construing its temporal requirement. *See Wilson v. Comm'r*, 705 F.3d 980, 987–88 (9th Cir. 2013) (holding that we may consult legislative history as an aid to the interpretation of ambiguous text). Congress amended § 1325(b), adding the statutory text concerning the "applicable commitment period" that is at issue here, in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, § 318, 119 Stat. 23. The legislative history of BAPCPA supports our interpretation of § 1325(b)(1)(B) as requiring a minimum plan duration:

> **Chapter 13 Plans To Have a 5–Year Duration in Certain Cases.** Paragraph (1) of section 318 of the Act amends Bankruptcy Code sections 1322(d) and 1325(b) to specify that a chapter 13 plan may not provide for payments over a period that is not less than five years if the current monthly income of the debtor and the debtor's spouse combined exceeds certain monetary thresholds. If the current monthly income of the debtor and the debtor's spouse fall below these thresholds, then the duration of the plan may not be longer than three years, unless the court, for cause, approves a longer period up to five years. The applicable commitment period may be less if the plan provides for payment in full of all allowed unsecured claims over a shorter period. Section 318(2), (3), and (4)

make conforming amendments to sections
1325(b) and 1329(c) of the Bankruptcy Code.

H.R. Rep. No. 109–31(I), § 318, at 79 (2005), *reprinted in*
2005 U.S.C.C.A.N. 88, 146 (boldface type added). Although
the quoted section of the House Report is confusingly
worded, its title suggests that above-median debtors are to be
held to a five-year minimum plan duration without regard to
their expenses or disposable income, unless they pay
unsecured claims in full over a shorter period.

Finally, our interpretation of § 1325(b)(1)(B) is consistent
with the policies that underlie the Bankruptcy Code and the
BAPCPA amendments. "The principal purpose of the
Bankruptcy Code is to grant a 'fresh start' to the 'honest but
unfortunate debtor.'" *Marrama v. Citizens Bank*, 549 U.S.
365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279,
286, 287 (1991)). But that generality is not the end of the
story. We have recognized that bankruptcy also serves the
"often conflicting" policy of promoting creditors' interest in
repayment. *Dumont v. Ford Motor Credit Co. (In re
Dumont)*, 581 F.3d 1104, 1111 (9th Cir. 2009); *see also
Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 729 (2011)
(describing "BAPCPA's core purpose [as] ensuring that
debtors devote their full disposable income to repaying
creditors"). The imposition of a minimum duration is
consistent with both of those policies: By ensuring the
availability of plan modification over the applicable
commitment period, even when the debtor cannot make any
payments at the outset, our reading permits Chapter 13 to
operate as a mechanism for repayment *over time* by wage
earners, in accordance with their actual ability to pay. *See
generally* 8 *Collier on Bankruptcy* ¶ 1300.02 (Alan N.
Resnick & Henry J. Sommer eds., 16th ed. 2012).

In *Lanning*, the Supreme Court relied in part on similar considerations in rejecting an interpretation of § 1325(b) that would require courts to calculate projected disposable income using a "mechanical approach" that depends only on a debtor's current monthly income during the six-month period preceding the bankruptcy filing date. 130 S. Ct. at 2469–70. The Court favored a "forward-looking" approach that takes into account known or nearly certain information about changes in a debtor's earning power during the plan period. *Id.* at 2475. The policy justification for looking to future earnings is that a failure to do so "would deny creditors payments that the debtor could easily make." *Id.* at 2476. In other words, the statute is meant to allow creditors to receive increased payments from debtors whose earnings happen to increase. *Lanning* involved *pre*-confirmation adjustments to plan payments, "to account for known or virtually certain changes" in a debtor's income. *Id.* at 2475. But the same logic persuades us that Congress intended § 1325(b)(1)(B) to ensure a plan duration that gives meaning to § 1329's modification procedure as a mechanism for *post*-confirmation adjustments for unforeseen increases in a debtor's income. That mechanism will achieve its purpose most effectively if the Chapter 13 plan has a minimum duration within which modification is possible. Accordingly, the policy that underlies *Lanning* also supports our reading of § 1325(b)(1)(B).

## III.  Conclusion

In summary, we hold that a bankruptcy court may confirm a Chapter 13 plan under 11 U.S.C. § 1325(b)(1)(B) only if the plan's duration is at least as long as the applicable commitment period provided by § 1325(b)(4). Accordingly, we overrule *Kagenveama*'s holding regarding the meaning of

"applicable commitment period" and affirm the bankruptcy court's ruling.

The mandate shall issue forthwith.

**AFFIRMED.**

---

PREGERSON, Circuit Judge, dissenting, with whom KOZINSKI, Chief Judge, joins:

The majority overrules our holding in *Maney v. Kagenveama* that the Chapter 13 "applicable commitment period" does not mandate a five-year plan length for above median debtors with no projected disposable income. 541 F.3d 868, 876 (9th Cir. 2008). The majority's interpretation of 11 U.S.C. § 1325(b)(1)(B) promotes goals that are at odds with Congress's purpose when it enacted Chapter 13 to "provide the debtor with a fresh start." H.R. REP. NO. 95-595, at 117 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6079. The majority also reads language into Chapter 13 bankruptcy law that is not present in the plain text of § 1325(b)(1)(B).

## I. Bankruptcy's Purpose is to Provide Debtors with a Fresh Start

Congress enacted the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549 to make "bankruptcy a more effective remedy for the unfortunate consumer debtor." H.R. REP. NO. 95-595, at 4 (1977). At the time, Congress lamented that "[e]xtensions on plans, new cases, and newly incurred debts put some debtors under court supervised

repayment plans for seven to ten years." *Id.* at 117. Congress went on to say that such lengthy repayment plans were "the closest thing there is to indentured servitude." *Id.* Congress stated that "bankruptcy relief should be effective, and should *provide the debtor with a fresh start*." *Id.* (emphasis added). Chapter 13 bankruptcy was intended to be helpful to debtors and creditors. Debtors are able to preserve existing assets if they complete a repayment plan under the supervision of a Chapter 13 trustee. SCOTT ET AL., 8 COLLIER ON BANKRUPTCY 1300-12 (Lawrence P. King et al. eds., 15th ed. rev. 2007). Creditor interests are promoted through recoveries from future income that are not available in Chapter 7 liquidation. *Id.*

Congress updated the bankruptcy laws for the first time since 1978 with the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005). At the law's signing, President George W. Bush reiterated many of the purposes expressed by Congress in 1978:

> Our bankruptcy laws are an important part of the safety net of America. *They give those who cannot pay their debts a fresh start*. . . . Under the new law, Americans who have the ability to pay will be required to pay back at least a portion of their debts. Those who fall behind their state's median income will not be required to pay back their debts. . . . The act of Congress I sign today will protect those who legitimately need help, stop those who try to commit fraud, and bring greater stability and fairness to our financial system.

Press Release, White House Press Office, President Signs Bankruptcy Abuse Prevention, Consumer Protection Act (Apr. 20, 2005), *reprinted in* 2005 U.S.C.C.A.N. S7, 2005 (emphasis added).

## II. The Applicable Commitment Period does not Mandate a Five-Year Chapter 13 Plan for Debtors with no Projected Disposable Income

Unlike the majority, I interpret § 1325 to mean that the applicable commitment period in which debtors are required to distribute projected disposable income to unsecured creditors applies only to debtors with projected disposable income.

Chapter 13 bankruptcy, as enacted in the Bankruptcy Reform Act of 1978, allows a debtor to use future income to pay off debt, while allowing her to keep her assets. *See* H.R. REP. NO. 95-595 at 118 (1977); *see also* 8 SCOTT ET AL., supra, at 1300–12. A Chapter 13 debtor is designated "above median" when her annualized "current monthly income," 11 U.S.C. § 101(10A), is greater than the yearly "median family income" in her state. 11 U.S.C. § 1325(b)(2)–(3); 11 U.S.C. 101(10A). The Floreses are above median debtors. When an above median Chapter 13 debtor's monthly expenses are greater than her monthly income as calculated under 11 U.S.C. § 707(b)(2)(A)–(B), she is deemed to have no projected disposable income. *See* 11 U.S.C. § 1325(b)(3). Here, it is undisputed that the Floreses' expenses are greater than their income and that they have no projected disposable income.

A Chapter 13 debtor is solely responsible for filing a proposed payment plan. 11 U.S.C. § 1321. Among the

requirements for Chapter 13 plans are: that the plan is proposed and the petition is filed in good faith; that the holders of secured claims approve of the plan; that the debtor will be able to make all payments under and comply with the plan; and that the total payments to be made under the plan are not less than the amount that would be paid if the estate of the debtor were liquidated under Chapter 7. 11 U.S.C. § 1325(a)(3)–(7). Above median debtors are instructed that "the [Chapter 13] plan [they propose] may not provide for payments over a period that is longer than five years." 11 U.S.C. § 1322(d)(1).

The Floreses proposed a three-year plan during which they would make monthly payments of $122. The trustee objected to the Floreses' proposed plan on the ground that the plan should have required payments for five years, rather than three years. The bankruptcy judge increased the monthly payments to $148 and the length of the plan to five years; the monetary increase is not contested on appeal. It is undisputed that the Floreses' three-year Chapter 13 plan was proposed in good faith, that the Floreses are able to comply with the plan, and that the Floreses are paying more than they would be if they liquidated their assets under Chapter 7. It is also undisputed that the Floreses' three-year Chapter 13 bankruptcy plan was less than five years pursuant to § 1322(d)(1).

If a trustee or unsecured creditor objects to a debtor's Chapter 13 plan, the bankruptcy court may not approve the plan unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). The applicable commitment period is three

years for debtors with below median income and five years for debtors with above median income. 11 U.S.C. § 1325(b)(4)(A). Because the Floreses are above median debtors, their corresponding applicable commitment period is five years. The Floreses, however, have no projected disposable income. Thus, the Floreses will contribute no projected disposable income to unsecured creditors over their five year applicable commitment period.

Courts have approached the applicable commitment period in several different ways. Some courts, such as the majority here, endorse what is called the temporal approach, where the applicable commitment period is treated as a time requirement for Chapter 13 plan length. This approach has been endorsed by the Sixth, Eighth, and Eleventh Circuits, and district courts in the Fifth, Seventh, and Tenth Circuits. *See Baud v. Carroll*, 634 F.3d 327 (6th Cir. 2011); *In re Tennyson*, 611 F.3d 873 (11th Cir. 2010); *In re Frederickson*, 545 F.3d 652 (8th Cir. 2008); *In re Martin*, 464 B.R. 798 (C.D.Ill. 2012)*; In re Wing*, 45 B.R. 705 (D. Co. 2010)*; In re Meadows*, 410 B.R. 242 (N.D. Tx. 2009). Other courts have endorsed the monetary approach, where debtors contribute a set amount of money in a time period that may be shorter than the applicable commitment period. This approach has been endorsed by district courts in the Second and Third Circuits. *See In re Green*, 378 B.R. 30 (N.D.N.Y. 2007); *In re Vidal*, 418 B.R. 135 (M.D. Pa. 2009). I continue to endorse the hybrid approach we endorsed in *Kagenveama* and in the original *Flores* opinion. Under that approach, "the 'applicable commitment period' sets the minimum temporal duration of a plan, but it is inapplicable to a plan submitted . . . by a debtor with no 'projected disposable income.'" *Danielson v. Flores*, 692 F.3d 1021, 1027 (9th Cir. 2012).

The Chapter 13 "applicable commitment period" does not explicitly apply to debtors who qualify for Chapter 13 bankruptcy but have no projected disposable income. The majority concludes, however, that the "applicable commitment period" should determine the requisite length of a Chapter 13 plan for all debtors, whether or not they have projected disposable income. The majority disregards the portion of § 1325(b)(1)(B) that ties the "applicable commitment period" to the period of time when projected disposable income is supposed to be distributed to unsecured creditors. Under § 1325(b)(1)(B), the bankruptcy court may not approve the plan unless "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." By doing so, the majority interprets § 1325(b)(1)(B) to say that when a trustee objects to a Chapter 13 plan, the bankruptcy court may not approve the plan unless "the plan provides that all of the debtor's [Chapter 13 *payments*] to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan." § 1325(b)(1)(B).

The majority's reading of § 1325(b)(1)(B) is at odds with the provision's plain language. A debtor's payments under a Chapter 13 bankruptcy plan are different than the disposable income a debtor is projected to earn over a period of years. After the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), a debtor does not need to have projected disposable income to qualify for, and make payments under, a Chapter 13 bankruptcy plan. *See* Henry E. Hildebrand II, *Impact of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 of Chapter 13 Trustees*, 79 AM. BANKR. L.J. 373, 389 (2005) ("The formula utilized

in the means test [to determine projected disposable income] has no relation to the proposed plan and bears no relationship to the amount of money that actually may be available from a debtor for payments to unsecured creditors if a plan is confirmed.").

Nor is there any indication from Congress that the statutory difference between projected disposable income and Chapter 13 plan payments was an unintended consequence or oversight. *See* Susan Jensen, *A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 AM. BANKR. L.J. 485, 567–68 (2005) (explaining that, like the Bankruptcy Reform Act of 1978, the BAPCPA of 2005 was adopted in the absence of economic depression and panic, and is the culmination of nearly ten years of work, involving hundreds of participants) (citation omitted).

The majority concludes that the exception permitting a shorter applicable commitment period under § 1325(b)(4)(B) does not apply to the Floreses. The majority's conclusion is correct, but the majority's reasoning is flawed. The majority understands shortening the applicable commitment period to be the same thing as shortening the length of the plan. The exception reads:

> [The applicable commitment period] may be less than 3 or 5 years . . . only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

*Id.* The majority reasons that the Floreses may not propose a plan with an applicable commitment period that is shorter than five years because the Floreses have not proposed a plan in which their unsecured claims will be paid in full. Under a

reading of the plain text of the statute, however, the exception is inapplicable to the Floreses. Because the Floreses have no projected disposable income to distribute to unsecured creditors during the applicable commitment period, there is no applicable commitment period that applies to them. Thus, the § 1325(b)(4)(B) exception has no bearing on the length of the plan the Floreses may propose.

The majority's concern that only a mandatory minimum plan duration will "allow creditors to receive increased payments from debtors whose earnings happen to increase" is unfounded. Maj. 16. As above median debtors with no projected disposable income, the Floreses are bound by several statutory requirements that are helpful to creditors: that their plan be proposed in good faith; that they are able to comply with the plan and make all payments; and that they pay more in Chapter 13 bankruptcy than they would in Chapter 7 bankruptcy. Moreover, the Floreses' plan may be modified after the plan is confirmed, but before payments are completed, by the debtor, trustee, or the holder of an allowed unsecured claim. 11 U.S.C. § 1329(a). The plan may be modified to:

> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments;
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of

any payment of such claim other than under the plan; or

(4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance.

*Id.* Section 1329(c) reiterates that even though a plan may be extended after it is confirmed, a "court may not approve a [Chapter 13 plan] period that expires after five years."

There is no statutory language to support the majority's finding that when Trustee Danielson objected to the Floreses' proposed plan length of three years, the bankruptcy court was statutorily prohibited from approving a plan shorter than five years in length.

## CONCLUSION

Under the majority's reading of § 1325(b)(1)(B), above median debtors with no projected disposable income will be forced to propose five year plans in contravention of Congress's purpose when it implemented Chapter 13 to make "bankruptcy a more effective remedy for the unfortunate consumer debtor." H.R. REP. NO. 95-595, at 5966 (1977). The majority misreads § 1325(b)(1)(B) to require that the bankruptcy court approve a Chapter 13 plan only if all of a debtor's Chapter 13 payments—rather than projected disposable income—will be received during the applicable commitment period.

After Trustee Danielson objected to the Floreses' proposed plan, the bankruptcy court was not statutorily

precluded from approving the Floreses' three-year Chapter 13 repayment plan.  Therefore, I respectfully dissent.